844 F.2d 789
 Unpublished Disposition
NOTICE: Sixth Circuit Rule 24(c) states that citation of unpublished dispositions is disfavored except for establishing res judicata, estoppel, or the law of the case and requires service of copies of cited unpublished dispositions of the Sixth Circuit.
Robert L. McDUFFEY, Plaintiff-Appellant,
v.
Otis R. BOWEN, M.D., Secretary of Health and Human Services,
Defendant-Appellee.
 No. 87-1556.
 United States Court of Appeals, Sixth Circuit.
 April 8, 1988.
 
 Before MILBURN, Circuit Judge, WEICK and CONTIE, Senior Circuit Judges.
 PER CURIAM.
 
 
 1
 Robert L. McDuffey appeals from the district court's judgment affirming the Secretary's determination that he was not disabled for a continuous twelve-month period, and is, consequently, not entitled to social security disability benefits for the period of time between August 11, 1984, and November 24, 1985. For the following reasons, we affirm the judgment of the district court.
 
 I.
 
 2
 On August 12, 1985, McDuffey applied for a period of disability and disability insurance benefits. He claimed an inability to work from August 11, 1984, due to the fracture of two vertebrae in his cervical spine which he sustained as the result of a swimming accident. His application was denied initially and upon reconsideration. McDuffey then requested an administrative hearing which was held on April 9, 1986. McDuffey was thirty years old at the time of the hearing.
 
 
 3
 At the hearing, the following evidence was introduced. McDuffey testified that he was born on June 2, 1955, has a high school education, and has worked as a truck driver, sand loader, production relief man, coal hauler, and tire-rim production worker. He stated that immediately prior to his accident, he worked at Vulcan Mold & Iron (Vulcan) as a ladle repairman and equipment operator. Since his return to Vulcan, on November 25, 1985, McDuffey has worked as a number maker which requires him to lift minimal weights and allows him to alternately sit and stand.
 
 
 4
 At the hearing, McDuffey further testified that, on August 11, 1984, he slid head first down a slide into a lake at a KOA campground and hit his head on the bottom of the lake. He was immediately taken to Seaway Hospital and placed in a halo-traction device. He remained in the traction device until his discharge from the hospital on August 23, 1984. He was then placed in a halo-jacket for approximately two and one-half months. Following that, he was fitted with a Somi-brace that he wore for four months. Subsequently, he was placed in a Philadelphia (soft) cervical collar, until November 25, 1985, when he returned to work on a light duty activity.
 
 
 5
 McDuffey indicated that from the time of his accident, to the time he returned to work, he experienced pain which was relieved by taking Tylenol-three, two or three times per day, and by sitting in a recliner for up to twelve hours each day. He spent his days either watching television, reading, or sleeping, since he was unable to sleep at night. He did no household chores and could sit for one hour and stand for fifteen to twenty minutes without discomfort. When he tried to walk, his legs tired out and he felt pressure on top of his shoulders. He drove once at the end of March, 1985, down the street to a friend's house. He indicated that his doctor advised him against physical therapy and suggested that he exercise at home by moving his head up and down and back and forth to increase his range of motion.
 
 
 6
 Further, Dr. Lois Brooks, a vocational counselor, testified at the hearing. She stated that McDuffey's present job would be considered unskilled and light to sedentary. She added that there are approximately 11,000 to 12,000 unskilled, sedentary jobs in the Detroit area. Based on the assumption of a significant restriction in neck movement, Brooks predicted that McDuffey could perform only one-quarter of that number. Further, in response to a hypothetical question, Brooks answered that, assuming McDuffey experienced constant pain in his head, neck, shoulders and back, was severely limited in his range of motion in these areas, experienced weakness in his upper extremities upon prolonged use, had to wear various braces, and had to lie down for twelve hours each day, McDuffey could perform no jobs.
 
 
 7
 The following medical evidence was introduced at the trial.
 
 
 8
 A report dictated by Dr. Alfredo Balarezo, on September 25, 1984, indicates that McDuffey was admitted to Seaway Hospital on August 11, 1984, and discharged on August 23, 1984. The report states that McDuffey did not lose consciousness, but had a crampy feeling in his left upper arm. Cervical spine films demonstrated a cervical fracture at the level of C1, and compression of the C6 vertebrae body. Cervical alignment was good at C1 and at C6. Initially, McDuffey reported some suboccipital pain which gradually subsided. He reported no other complaints and was discharged on August 23, 1984, with instructions to maintain the tong sites clean with Iodine solution, to take Tylenol-three as needed for pain, to refrain from heavy lifting, and to stay indoors.
 
 
 9
 In an August 12, 1984 report, Dr. Balarezo indicated that McDuffey never noticed weakness in his extremities or paresthesias, did not complain of headaches or nausea, spoke coherently, and remained awake and alert. Dr. Balarezo reported that McDuffey stated that he did not notice any weakness in his four extremities.
 
 
 10
 In a follow-up report, dated January 2, 1985, Dr. Balarezo noted that McDuffey had been admitted to Seaway Hospital on September 26, 1984, for removal of the halo-jacket that he had been wearing for about seven weeks. McDuffey denied any difficulties with his upper and lower extremities; he ambulated well, and his fractures were in good alignment. Balarezo instructed McDuffey to avoid any heavy activity and to wear his Somi-brace at all times. McDuffey needed no pain medication at the time.
 
 
 11
 Progress notes written by Dr. Balarezo indicated that Balarezo examined McDuffey in his office on ten occasions from August 30, 1984, through July 17, 1985. Balarezo repeatedly noted that McDuffey was progressing well and had no complaints of paresthesias or weakness of the upper extremities. McDuffey took Tylenol-four for discomfort at the pin sites. McDuffey further denied headaches, diplopia, or dizziness except, on February 18, 1985, when he stated that he occasionally has minor occipital and temporal headaches. On March 19, 1985, McDuffey admitted that he had been removing his cervical collar at times during the day, and, by May 21, 1985, he was taking it off most of the time during the day. By May 21, 1985, McDuffey reported some aching across his left shoulder region, and, on July 17, 1985, he reported a pulling sensation in the back of his neck with neck motion. His neurological examinations were consistently within normal limits.
 
 
 12
 In a letter written by Dr. Balarezo to the Social Security Administration, on March 25, 1986, Balarezo indicated that McDuffey was recommended not to return to work from August of 1984, through November 25, 1985, because of his physical incapacity while wearing the halo-jacket and Somi-brace which would significantly restrict the rotation of any movement of his neck.
 
 
 13
 Dr. Frank Cullis examined McDuffey on July 31, 1985. Dr. Cullis recounted McDuffey's accident and stated that McDuffey wears his cervical collar while in bed and while driving. McDuffey claimed persistent symptoms from the accident and takes two Tylenol-three tablets approximately three times weekly. He told Dr. Cullis that he could not return to work because of headaches, pain in the neck with limitation of range of motion, pain in the upper extremities, and weakness in both upper extremities. Further, he complained to Dr. Cullis of constant radiation of pain from his neck, down his upper extremities, to his hands. He feels a constant weight on his shoulders and an increasing weakness in both legs. He has difficulty lifting weights over five pounds and standing for no more than twenty minutes produces the feeling of an increasing weight on both shoulders.
 
 
 14
 Dr. Cullis conducted a physical examination and discovered that McDuffey's neck rotation to the right is limited by 25? and, to the left, is limited by 20?. His upper extremities showed full range of motion in the joints, but he complained of a feeling of tension in his neck and shoulder area as he carried out movements in his shoulders and elbows.
 
 
 15
 On the basis of his examination, Dr. Cullis opined that McDuffey's symptoms were supported by clinical and radiological findings. He has post-traumatic headaches, compression deformity of the seventh cervical vertebrae body, and traumatic arthritis of the cervical spine. He recommended physical therapy for the spine and upper extremities, anti-inflammatory medication, and pain medication as necessary. He advised against physical stress on the cervical spine and bending and twisting movements of the spine. He advised against physical stress upon, and repetitive movements involving, the upper extremities. He felt that the symptoms of the spine and upper extremities were permanent and that the headaches would persist for a prolonged period of time.
 
 
 16
 On the basis of this evidence, the ALJ determined, on April 23, 1986, that McDuffey had, by July 17, 1985, regained the capacity to perform a limited range of sedentary work and that McDuffey was not prevented from performing such work for at least twelve continuous months. The ALJ consequently found that McDuffey was not entitled to a closed period of disability.
 
 
 17
 McDuffey appealed the ALJ's decision to the Appeals Council which, on July 23, 1986, declined to review the ALJ's decision, McDuffey then timely filed the instant action with the district court pursuant to 42 U.S.C. Sec. 405(g). The cause was referred to a United States Magistrate who recommended affirming the Secretary's denial of benefits. On May 15, 1987, the district court adopted the Magistrate's Report and Recommendation and thereby affirmed the Secretary's denial of a closed period of disability and disability insurance benefits. This timely appeal followed. On appeal, the only issue is whether the Secretary's finding that McDuffey was not disabled for a continuous twelve-month period and therefore not entitled to disability insurance benefits is supported by substantial evidence.
 
 II.
 
 18
 This court has jurisdiction on appeal to review the Secretary's decisions pursuant to 42 U.S.C. Sec. 405(g) which also specifies that the Secretary's factual findings in a social security case are conclusive if supported by substantial evidence. "Substantial evidence means more than a mere scintilla. It means such relevant evidence as a reasonable mind might accept as adequate to support a conclusion." Kirk v. Secretary of Health & Human Servs., 667 F.2d 524, 535 (6th Cir.1981) (quoting Richardson v. Perales, 402 U.S. 389, 401 (1971)), cert. denied, 461 U.S. 957 (1983). In determining this question, we examine the record "taken as a whole," Allen v. Califano, 613 F.2d 139, 145 (6th Cir.1980), and " 'must take into account whatever in the record fairly detracts from its weight.' " Beavers v. Secretary of Health, Educ. & Welfare, 577 F.2d 383, 387 (6th Cir.1978) (quoting Universal Camera Corp. v. NLRB, 340 U.S. 474, 488 (1951)). Even if the reviewing court were to resolve the factual issues differently, the Secretary's determination must stand if it is supported by substantial evidence. Kinsella v. Schweiker, 708 F.2d 1058, 1059 (6th Cir.1983) (per curiam). This deferential standard of review applies only to resolving issues of fact and credibility. Wiggins v. Schweiker, 679 F.2d 1387, 1389, fn. 3 (11th Cir.1982).
 
 
 19
 The claimant has the ultimate burden to establish an entitlement to benefits by proving the existence of a disability as defined in 42 U.S.C. Sec. 423(d)(1)(A).[1] If the claimant is working, benefits are automatically denied. If a claimant is not found to have an impairment which significantly limits his ability to work (a severe impairment), then he is not disabled. Since the ALJ found that McDuffey had not been employed from August 11, 1984, through November 25, 1985, and that McDuffey had suffered a severe impairment, further inquiry was necessary. If the individual is not working and has a severe impairment, it must be determined whether he suffers from one of the "listed" impairments. 20 C.F.R. Pt. 404, Subpt. P, App. 1; see 20 C.F.R. Sec. 404.1525(a). If so, benefits are owing without further inquiry. In the present case, the ALJ found that McDuffey did not suffer from one of the listed impairments. In such a case, assuming the claimant has previously worked, the Secretary must next decide whether the claimant can return to the job he previously held. By showing "a medical basis for an impairment that prevents him from engaging in his particular occupation," Hephner v. Mathews, 574 F.2d 359, 361 (6th Cir.1978), the individual establishes a prima facie case of disability. In this case, the ALJ determined that McDuffey had suffered a severe impairment which prevented him from performing his past relevant work during the requested closed period.
 
 
 20
 At this step in the analysis, it becomes the Secretary's burden to establish the claimant's ability to work. Allen, 613 F.2d at 145. The Secretary must prove that, taking into consideration present job qualifications such as age, experience, education, and physical capacity, and the existence of jobs to match those qualifications, a claimant retains the capacity to perform a different kind of job. 42 U.S.C. Sec. 423(d)(2)(A); 20 C.F.R. Sec. 404.1520(f)(1); Heckler v. Campbell, 461 U.S. 458, 460 (1983). In the present case, the ALJ found that McDuffey had regained, by July 17, 1985, the residual functional capacity to perform a limited range of sedentary work which was identified by the vocational expert. Accordingly, the ALJ found that McDuffey was not entitled to a closed period of disability.
 
 
 21
 On appeal, McDuffey argues that his impairment had continued for a twelve-month period and that the Secretary erred in discrediting his complaints of disabling pain, in discrediting the opinions of both the treating and consulting physicians, and in applying the medical-vocational guidelines to find that he was not disabled.
 
 
 22
 An examination of the record in this case reveals that there is substantial evidence in the record to support the Secretary's determination that McDuffey was not disabled within the meaning of the Social Security Act for at least twelve continuous months and that McDuffey consequently was not entitled to disability insurance benefits. The record supports the Secretary's conclusion that McDuffey was able, by at least July 31, 1985, to perform a limited range of sedentary work.
 
 
 23
 With respect to his ability to return to work by July 31, 1985, as indicated in the statement of facts, McDuffey's treating physician, Dr. Balarezo, in a letter addressed to the Social Security Administration, on March 25, 1986, indicated that he had recommended that McDuffey not return to work until after November 25, 1985. Dr. Balarezo opined that McDuffey would have been unable to work up to that time because of the restrictions on his neck movement caused by the halo-jacket and Somi-brace. Dr. Balarezo's own notes, however, indicate that, by February 18, 1985, McDuffey's Somi-brace had been replaced by a soft cervical collar. Additionally, according to Balarezo's notes, McDuffey was even removing the soft cervical collar for most of the day by May 21, 1985.[2] McDuffey, moreover, informed Dr. Cullis, during his July 31, 1985 examination, that he wore his soft cervical collar only for driving or while sleeping.
 
 
 24
 With respect to McDuffey's ability to perform a limited range of sedentary work, the Secretary relied in part on the testimony of a vocational expert, Dr. Brooks. Dr. Brooks testified that someone with a significantly restricted range of motion in his neck could perform at least one-quarter of the 11,000 to 12,000 unskilled sedentary jobs in the Detroit area. The appropriate job for such an individual, according to Brooks, would be one where the employee could sit at a table and assemble items that were directly in front of him as opposed to moving on an assembly line. What little movement such job would require could be accommodated by the shoulders and body rather than the head.
 
 
 25
 Such description, contrary to McDuffey's contention, does not contradict the opinion of McDuffey's consulting physician, Dr. Cullis. Dr. Cullis opined that McDuffey's symptoms were supported by clinical and radiological findings. He recommended physical therapy for the cervical spine and upper extremities and suggested that McDuffey avoid physical stress, bending and twisting movements on the cervical spine. Further, he suggested that McDuffey avoid repetitive movements of the upper extremities. The job described by Dr. Brooks does not require bending and twisting of the spine. It instead requires that the work be directly in front of the employee. Further, the job does not require repetitive movements of the upper extremities although Dr. Cullis reported a full range of motion in McDuffey's upper extremities, and McDuffey repeatedly advised Dr. Balarezo that he never experienced weakness in his upper extremities. Thus, substantial evidence supports the Secretary's determination that McDuffey's retained the residual functional capacity to perform a limited range of work by at least July 31, 1985.
 
 
 26
 McDuffey next argues that the Secretary erred in discrediting his complaints of disabling pain. Specifically, the Secretary found that McDuffey had overstated his symptoms at the hearing.
 
 
 27
 With respect to pain, this court has previously held that subjective complaints of pain may support a claim for disability. Duncan v. Secretary of Health & Human Servs., 801 F.2d 847, 852 (6th Cir.1986). To support such claim, however, there must be objective medical evidence of an underlying medical condition in the record. Id. at 853. If so, the court must then determine either that the objective medical evidence confirms the severity of the alleged disabling pain arising from the condition or that the objectively established medical condition is of such a severity that it can reasonably be expected to produce such disabling pain. Id.
 
 
 28
 In his findings, the ALJ determined that the medical evidence indicated that McDuffey had fractured two vertebrae in his cervical spine. This finding is supported by substantial medical evidence. Thus, McDuffey meets the first prong of the Duncan standard--there is objective medical evidence of an underlying medical condition.
 
 
 29
 The ALJ also found that McDuffey's subjective complaints of disabling pain were not supported by objective evidence. This is tantamount to finding that McDuffey has failed the second prong of the Duncan standard. We find that substantial evidence in the record supports this finding because neither of the alternative tests of the second prong of the Duncan standard is satisfied.
 
 
 30
 First, there is substantial evidence to support a finding that there is not objective medical evidence which confirms the severity of the alleged pain. In his progress notes, Dr. Balarezo reported, following each examination, that McDuffey was recovering well. Early in the recovery, Dr. Balarezo's only reference to pain related to the pins that had been inserted into McDuffey's skull to secure the halo-vest. Subsequent notes refer, on one occasion, to minor occipital and temporal headaches, and, on another occasion, to some aching across the left shoulder region. In other notes, McDuffey specifically denied having pain. Indeed, in McDuffey's initial hospital record, Balarezo noted some suboccipital pain which gradually subsided. In a subsequent hospital record, Balarezo noted that he had discharged McDuffey on September 28, 1984, and that McDuffey needed no pain medication. Further, Dr. Cullis recommended, on July 31, 1985, that McDuffey take pain medication as necessary but did not describe McDuffey's pain as severe or disabling.
 
 
 31
 Second, substantial evidence supports the Secretary's findings that McDuffey's objectively determined medical conditions are not so severe that they could reasonably be expected to produce disabling pain. The medical records indicate that McDuffey's fracture was in good alignment. Specifically, Dr. Balarezo interpreted cervical spine films as indicating good alignment of the fractured vertebrae on September 28, 1984. On May 13, 1985, Dr. C.Y. Han, submitted a radiology report noting the fractures and indicating minor degenerative changes at the C5 vertebrae body, minimal deformity from the fracture, and no narrowing of the disc space between C6 and C7. Dr. Balarezo repeatedly noted that McDuffey's neurological examinations were normal and that McDuffey complained of no weakness in his upper extremities. Moreover, Dr. Cullis found McDuffey's range of motion in his neck somewhat limited, but found full range of motion and full sensation in his upper extremities. Dr. Cullis interpreted x-rays of McDuffey's spine as indicating a narrowing of the intervertebral disc spacing at the C6-C7 level and some compression deformity of C7. Finally, Dr. Cullis recommended physical therapy for McDuffey's spine and upper extremities. Accordingly, the medical evidence does not indicate that McDuffey's diagnosed infirmities are so severe that they could reasonably be expected to produce disabling pain.
 
 
 32
 Since the medical evidence supports a finding that McDuffey does not meet either of the alternative tests of the second prong of the Duncan standard, we conclude there is substantial evidence to support the finding that McDuffey does not suffer from disabling pain.
 
 
 33
 Next, McDuffey argues that the Secretary erred in using the medical-vocational guidelines to determine that he is not disabled because his allegation of the nonexertional disability of pain rendered the grids inapplicable. We find that the ALJ did not err in using the grid as a framework because the claimant had both exertional and nonexertional disabilities. Such was entirely proper in light of the regulations which provide:
 
 
 34
 [W]here an individual has an impairment or combination of impairments resulting in both strength limitations and nonexertional limitations the rules in this subpart are considered in determining first whether a finding of disabled may be possible based on the strength limitations alone and, if not, the rule(s) reflecting the individual's maximum residual strength capabilities, age, education, and work experience provide a framework for consideration of how much the individual's work capability is further diminished in terms of any types of jobs that would be contraindicated by the nonexertional limitations.
 
 
 35
 20 C.F.R. Pt. 404, Subpt. P, App. 2, Sec. 200.00(e)(2).
 
 
 36
 In this particular case, the ALJ recognized that McDuffey experienced some pain in the fracture of his vertebrae and some limitation in the range of motion of his neck. Further, the ALJ relied upon the testimony of the vocational expert in determining that McDuffey, with his limitations, could perform a significant number of local sedentary jobs as described by the vocational expert. Thus, the ALJ used the grid merely as a framework in determining that McDuffey was not disabled, and, therefore, not entitled to benefits. This was entirely proper in light of the regulations.
 
 
 37
 Finally, McDuffey asserts that appellate review is precluded because the district court failed to enunciate clearly its findings and the bases for its conclusion. We reject this argument on the basis of this court's recent decision in Maziarz v. Secretary of Health & Human Servs., 837 F.2d 240 (6th Cir.1987). In that case, this court ruled:
 
 
 38
 As noted above, this court's function is limited to a determination of whether the Secretary's factual findings are supported by substantial evidence on the record as a whole. In light of the nature and scope of our review, we find that the district court's failure to set forth specific findings does not hinder our ability to review the merits of this case nor does it require a remand.
 
 
 39
 Id. at 244.
 
 
 40
 Accordingly, the judgment of the district court is AFFIRMED.
 
 
 
 [1]
 Section 423(d)(1)(A) provides:
 Inability to engage in any substantial gainful activity by reason of any medically determinable physical or mental impairment which can be expected to result in death or which has lasted or can be expected to last for a continuous period of not less than 12 months.
 
 
 [2]
 McDuffey asserts on appeal that the Secretary failed to accord due deference to the opinion of Dr. Balarezo, his treating physician. "The medical opinions and diagnosis of treating physicians are generally accorded substantial deference, and if those opinions are uncontradicted, complete deference." Harris v. Heckler, 756 F.2d 431, 435 (6th Cir.1985)
 In the present case, while Dr. Balarezo opined that McDuffey could not have returned to work until after November 25, 1985, he stated, as his reasoning, the restrictions of the halo-jacket and Somi-brace. The ALJ set forth as his basis for rejecting Dr. Balarezo's opinion the fact that it was inconsistent with Dr. Balarezo's progress notes during his treatment of McDuffey. While the ALJ could have been more specific, the inconsistency is apparent because Dr. Balarezo had replaced the Somi-brace with a soft cervical collar in February of 1985, well before McDuffey returned to work in November of 1985.