827 F.2d 770
 Unpublished Disposition
NOTICE: Sixth Circuit Rule 24(c) states that citation of unpublished dispositions is disfavored except for establishing res judicata, estoppel, or the law of the case and requires service of copies of cited unpublished dispositions of the Sixth Circuit.
Jerome MAZIARZ, Plaintiff-Appellant,
v.
SECRETARY OF HEALTH & HUMAN SERVICES, Defendant-Appellee.
 No. 86-1967.
 United States Court of Appeals, Sixth Circuit.
 Aug. 31, 1987.
 
 Before MERRITT, Circuit Judge, and GEORGE CLIFTON EDWARDS, Jr. and CONTIE, Senior Circuit Judges.
 PER CURIAM.
 
 
 1
 Claimant Jerome Maziarz appeals from a district court order affirming the Secretary's determination that he was not disabled and, therefore, not entitled to Disability Insurance Benefits. For the following reasons, we affirm the district court's order.
 
 I.
 
 2
 Maziarz filed his application for Disability Insurance Benefits on January 4, 1985, alleging a disability onset date of July 3, 1984. The Secretary denied claimant's application both initially and upon reconsideration. Claimant then requested a hearing before an Administrative Law Judge (ALJ), which was held on October 4, 1985.
 
 
 3
 Maziarz testified at the hearing that he was born on February 23, 1936, and was forty-nine years old. He had completed the twelfth grade, and he had been employed by Mechanical Insulation Services as an asbestos worker from 1954 through July 3, 1984. Claimant stated that he left his employment because of severe chest pain.
 
 
 4
 Claimant's job involved insulating hot and cold water pipes, steam pipes, and air conditioning systems. His work required lifting roles of blanket insulation which weighed approximately 120 pounds with no assistance. Maziarz also assumed supervisory responsibilities similar to a foreman's for some time. The record does not indicate the length of time since claimant last acted as a supervisor. When asked if he could perform his previous job, claimant replied that he did not think he could because the job would entail standing up, putting up with stress, and the heavy lifting he had done previously.
 
 
 5
 Upon reviewing the relevant medical evidence and claimant's testimony, the ALJ rendered his decision on October 23, 1985, concluding that Maziarz was not entitled to disability benefits. Initially, the ALJ determined that claimant had not engaged in substantial gainful activity since July 3, 1984. The ALJ found that claimant suffered from the severe impairment of coronary artery angioplasty and angina pectoris, but that he did not have an impairment or combination of impairments listed in or medically equal to one listed in Appendix 1. 20 C.F.R. pt. 404, subpt. P., app. 1. Further, the ALJ found that claimant was unable to perform his past relevant work as an asbestos worker. The ALJ determined, however, that claimant's complaints of functional limitation were out of proportion to the objective clinical evidence and were not fully credible. For example, the ALJ noted that although claimant complained that his cervical condition restricted his driving, he was able to drive his four wheel honda through the woods. In order to determine whether the claimant could perform other work, the ALJ noted that claimant was forty-nine years old, which meets the definition of a younger individual; that claimant had a high school education; that claimant had the residual functional capacity to perform the physical exertion requirements of work except for heavy lifting or work involving stress; that claimant could perform the limited range of light and sedentary work identified by the vocational expert; and that in light of claimant's age, education and residual functional capacity, the issue of transferability of work skills was not material. Using the medical-vocational guidelines as a framework, the ALJ concluded that claimant was not under a disability.
 
 
 6
 Maziarz requested review of the ALJ's decision by the Appeals Council, but on January 14, 1986, the Appeals Council found no basis for review. Thus, the ALJ's decision became the final decision of the Secretary.
 
 
 7
 Maziarz then filed the present action for judicial review with the district court pursuant to 42 U.S.C. Sec. 405(g). The district court referred the case to a magistrate. Upon consideration of claimant's motion for summary judgment, the magistrate issued a report and recommendation on June 24, 1986, recommending that claimant's motion be granted, and that the case be remanded for a computation of benefits to which he was entitled. The magistrate's recommendation was based on a finding that substantial evidence did not exist on the record to support the finding that claimant retained the residual capacity for light work. The magistrate, however, did not address the question of whether claimant retained the capacity to perform a limited range of sedentary work. The Secretary filed timely objections to the magistrate's report and recommendation.
 
 
 8
 On August 27, 1986, the district court rejected the magistrate's report and recommendation, concluding that substantial evidence supported the Secretary's finding that claimant could perform sedentary work. Claimant thereafter brought this timely appeal.
 
 II.
 
 9
 This court has jurisdiction on appeal to review the Secretary's decision pursuant to 42 U.S.C. Sec. 405(g) which specifies that the Secretary's factual findings are conclusive if supported by substantial evidence. " 'Substantial evidence' means 'more than a scintilla. It means such relevant evidence as a reasonable mind might accept as adequate to support a conclusion.' " Kirk v. Secretary of Health & Human Servs., 667 F.2d 524, 535 (6th Cir.1981) (quoting Richardson v. Perales, 402 U.S. 389, 401 (1971)), cert. denied, 461 U.S. 957 (1983). In determining this question, we must examine the evidence in the record "taken as a whole." Allen v. Califano, 613 F.2d 139, 145 (6th Cir.1980), and " 'must take into account whatever in the record fairly detracts from its weight.' " Beavers v. Secretary of Health, Educ. & Welfare, 577 F.2d 383, 387 (6th Cir.1978) (quoting Universal Camera Corp. v. NLRB, 340 U.S. 474, 488 (1951)). If it is supported by substantial evidence, the Secretary's determination must stand regardless of whether the reviewing court would resolve the issues of fact in dispute differently. Kinsella v. Schweiker, 708 F.2d 1058, 1059 (6th Cir.1983) (per curiam).
 
 
 10
 The claimant has the ultimate burden to establish an entitlement to benefits by proving the existence of a disability as defined in 42 U.S.C. Sec. 423(d)(1)(A). If the claimant is working, benefits are automatically denied. If a claimant is not found to have an impairment which significantly limits his ability to work (a severe impairment), then he is not disabled. Since the ALJ found that Maziarz had not worked since 1984 and that he suffered from a severe impairment, further inquiry was necessary. If a claimant is not working and has a severe impairment, it must be determined whether he or she suffers from one of the "listed" impairments. See 20 C.F.R. Sec. 404.1525(a) and 20 C.F.R. pt. 404, subpt. P, app. 1. If so, benefits are owing without further inquiry. In the instant case, the ALJ found that Maziarz did not suffer from one of the listed impairments. In such a case, assuming the individual had previously worked, the Secretary must next decide whether the claimant can return to the job he or she previously held. By showing "a medical basis for an impairment that prevents him from engaging in his particular occupation," Hephner v. Mathews, 574 F.2d 359, 361 (6th Cir.1978), the claimant establishes a prima facie case of disability. In the instant case, the ALJ found that Maziarz was not capable of returning to his particular occupation.
 
 
 11
 At this step in the analysis, it becomes the Secretary's burden to establish the claimant's ability to work. Allen, 613 F.2d at 145. The Secretary must prove that, taking into consideration present job qualifications such as age, experience, education and physical capacity, and the existence of jobs to match those qualifications, a claimant retains the capacity to perform a different kind of job. 42 U.S.C. Sec. 423(d)(2)(A); 20 C.F.R. Sec. 404.1520(f)(1); Heckler v. Campbell, 461 U.S. 458, 460 (1983). The Secretary's burden can, on occasion, be satisfied by relying on the medical-vocational guidelines, otherwise known as the "grid." See 20 C.F.R. pt. 404, subpt. P, app. 2. If the characteristics of the claimant do not identically match the description in the grid, however, the grid is used only as a framework or a guide to the disability determination. Kirk, 667 F.2d at 528. In the instant case, the ALJ found that claimant's characteristics did not identically match the description in the grid since Maziarz retained the residual functional capacity to perform only a limited range of sedentary work. Accordingly, the ALJ used the grid only as a guide to the disability determinations.
 
 A.
 
 12
 Initially, Maziarz argues that appellate review is precluded because the district court failed to enunciate clearly its findings and the bases for its conclusion. We reject this argument. As noted above, this court's function is limited to a determination of whether the Secretary's factual findings are supported by substantial evidence on the record as a whole. In light of the nature and scope of our review, we find that the district court's failure to set forth specific findings does not hinder our ability to review the merits of this case nor does it require a remand.
 
 
 13
 Maziarz also asserts that the district court erred as a matter of law in failing to apply the grid properly. More particularly, he maintains that the district court should have applied the grid as of February 23, 1986, when claimant was considered to be "closely approaching advanced age," which would have led to a determination of "disabled" under the grid. This argument is also without merit. As noted above, the district court and this court merely review the Secretary's application of the grid; we do not reevaluate the relevant vocational factors, such as age, unless there is an error in the Secretary's determination. Moreover, recently this court has held that the relevant time for determining a claimant's age in applying the regulations is the date of the ALJ's decision. See Varley v. Secretary of Health & Human Servs., No. 86-1466, slip op. at 6-7 (6th Cir. June 2, 1987). Because claimant was forty-nine years old on the date of the ALJ's decision, there is no error in the Secretary's determination of his age.
 
 B.
 
 14
 Maziarz argues that the Secretary erred in failing to find that his cervical condition constitutes a severe impairment. We find it unnecessary to decide this question. According to the regulations, upon determining that a claimant has one severe impairment, the Secretary must continue with the remaining steps in his disability evaluation as outlined above. In the instant case, the Secretary found that Maziarz suffered from the severe impairment of coronary artery disease, status post right coronary artery angioplasty and angina pectoris. Accordingly, the Secretary continued with the remaining steps in his disability determination. Since the Secretary properly could consider claimant's cervical condition in determining whether claimant retained sufficient residual functional capacity to allow him to perform substantial gainful activity, the Secretary's failure to find that claimant's cervical condition constituted a severe impairment could not constitute reversible error.
 
 C.
 
 15
 Maziarz argues further that the Secretary erred in failing to find that his cardiac condition meets or equals a "listed" impairment which would mandate a determination of "disabled" without considering his age, education, and work experience. Specifically, claimant argues that his cardiac condition meets 20 C.F.R. pt. 404, subpt. P, app. 1, Sec. 4.04 by satisfying subsections 4.04B1, 4.04B3b, 4.04B7, or 4.04B8 alternatively. We reject this argument.
 
 
 16
 Initially, section 4.04 which identifies ischemic heart disease with chest pain of cardiac origin requires that a claimant suffer from cardiac chest pain. The description of a claimant's chest pain must include the clinical characteristics discussed in section 4.00E which states that chest pain of cardiac origin "is considered to be pain which is precipitated by effort and promptly relieved by sublingual Nitroglycerin or rapid acting nitrates or rest. The character of the pain is classically described as squeezing, burning or oppressive pain located in the chest." 20 C.F.R. pt. 404, subpt. P, app. 1, Sec. 4.00E. In the instant case, the description of the claimant's chest pain included the characteristics set forth in section 4.00E. Accordingly, the Secretary properly found that claimant suffers from angina pectoris, or chest pain of cardiac origin.
 
 
 17
 In addition to the requirement that the claimant suffer from chest pain of cardiac origin, section 4.04 requires that the clinical findings be of the severity specified in any one of the several subsections. Section 4.04B7 requires:
 
 
 18
 Angiographic evidence (see 4.00H) (obtained independent of Social Security disability evaluation) showing one of the following:
 
 
 19
 a. 50 percent or more narrowing of the left main coronary artery; or
 
 
 20
 b. 70 percent or more narrowing of a proximal coronary artery (see 4.00H3) (excluding the left main coronary artery); or
 
 
 21
 c. 50 percent or more narrowing involving a long (greater than 1 cm.) segment of a proximal coronary artery or multiple proximal coronary arteries.
 
 
 22
 Section 4.00H, referred to above, identifies the proximal coronary arteries as the right coronary artery proximal to the acute marginal branch, the left anterior descending coronary artery (LAD) proximal to the first septal perforator, and the left circumflex coronary artery proximal to the first obtuse marginal branch.
 
 
 23
 In the instant case, a catheterization performed on July 10, 1984, indicated a fifteen to twenty percent obstruction in the first one-third of the first diagonal branch of the LAD. However, the LAD itself was normal. Additionally, this catheterization showed a subtotal occlusion in one of the branches of the posterior descending system of the right coronary artery. The fifteen to twenty percent stenosis of the first one-third of the first diagonal branch of the LAD does not meet or equal the obstruction required in the LAD itself. Similarly, the subtotal occlusion of an unspecified percent in one of the branches of the right coronary artery is too vague to meet or equal the listing. In July, 1984, a coronary arteriography indicated a long proximal fifty percent stenosis in the first diagonal branch of the LAD. The arteriography also showed an eighty percent stenosis of the distal portion of the right coronary artery. However, the angioplasty reduced this eighty percent narrowing to twenty to thirty percent. The fifty percent stenosis was not located in the left anterior descending artery itself as required by section 4.04B7c, but was located in one of its diagonal branches. In fact, the arteriography report specified that the LAD was normal except for long proximal fifty percent stenosis in the first diagonal branch. Moreover, even if this stenosis had been found in the LAD itself, the record contains no evidence that this "long" stenosis was greater than 1 cm. as section 4.04B7c requires. Finally, the eighty percent stenosis of the distal portion of the right coronary artery which was successfully reduced to twenty to thirty percent does not meet the listing because it was located in the distal portion, rather than the proximal portion, of the right coronary artery. Moreover, even if this stenosis had been found in the proximal portion of the right coronary, its successful reduction to twenty to thirty percent would prevent the claimant from meeting section 4.04B7c.
 
 Section 4.04B8 requires:
 
 24
 Akinetic or hypokinetic myocardial wall or septal motion with left centricular ejection fraction of 30 percent of (sic) less measured by contrast or radio-isotopic ventriculographic methods.
 
 
 25
 In the instant case, the only ejection fraction reported in the medical record was thirty-eight percent. Thus, claimant's condition does not meet or equal the requirements for this listing. Since claimant's cardiac condition does not meet or equal any of the alternative subsections proposed, there is no error in the Secretary's failure to find a listed impairment.
 
 D.
 
 26
 Finally, Maziarz argues that, having found him unable to return to his past relevant work, the Secretary failed to establish that he was able to perform a significant number of jobs in the national economy. Principally, claimant asserts that the vocational expert's testimony, relied on by the Secretary, was legally insufficient to support the Secretary's finding.
 
 
 27
 As outlined above, claimant is correct in stating that the Secretary has the burden of identifying jobs in the national economy that claimant can perform. Inherent in this process, however, is a factual determination of the claimant's residual physical capacity. In the instant case, the ALJ found that Maziarz was capable of performing a limited range of light and sedentary work--limited in the sense that claimant could not perform heavy lifting or work within a stressful setting.
 
 
 28
 We find that the ALJ's finding of residual functional capacity, at least as it pertains to a limited range of sedentary work, is supported by substantial evidence. Chest pain described to Dr. Sherman included angina upon walking up a slight incline or climbing a flight of stairs, becoming worse in warm environments, but no angina at rest. Non-cardiac findings reported by Dr. Sherman included visual acuity of twenty/twenty on the right and twenty/thirty on the left without glasses, upper extremities normal without deformity or atrophy, lower extremities essentially normal, peripheral pulses present and equal, normal alignment of the back, seventy degrees forward flexion out of a normal ninety degrees, normal extension and lateral bending, straight leg raising eighty degrees of a normal ninety degrees, ability to heel and toe walk, normal gait and stance, and normal reflexes. Chest pain described to Dr. Sharma included retrosternal pain and pressure radiating down the arms, upon walking too fast or using hands above the head, relieved in a couple of minutes by Nitroglycerin or rest, occurring "not too often." Non-cardiac findings reported by Dr. Sharma included range of motion in cervical spine with moderate to severe restriction but not measured in degrees, no neurological deficit, and muscle spasm in the cervical area "once in a while." This evidence supports a finding that the claimant was capable of performing a limited range of sedentary work. See 20 C.F.R. Sec. 4.04.1567(a).
 
 
 29
 Since Maziarz was found capable of performing only a limited range of sedentary work, the Secretary could not rely on the grid to satisfy his burden of proof. See Kirk, 667 F.2d at 535. Accordingly, the ALJ appropriately elicited the aid of a vocational expert to identify jobs in the national economy which Maziarz could perform. We must determine whether the vocational expert's testimony is legally sufficient to satisfy the Secretary's burden.
 
 
 30
 The vocational expert identified the following sedentary jobs in the lower two-thirds of the State of Michigan which Maziarz could perform assuming the restrictions reported by Dr. Sherman:
 
 10,000 teacher's aide positions
 15,000 cashier positions
 
 31
 10,500 self-service gas station attendant positions
 
 
 32
 2,700 telephone answering service operator positions
 
 
 33
 Assuming the cardiac restrictions reported by Dr. Sherman, the vocational expert identified the same sedentary jobs as indicated above. Assuming the non-cardiac restrictions reported by Dr. Sherman, however, the vocational expert identified no sedentary jobs which claimant could perform.
 
 
 34
 Maziarz asserts that the vocational expert's testimony was so internally inconsistent that it was insufficient to meet the Secretary's burden. We disagree. The vocational expert merely responded to several hypothetical questions which presumed different physical restrictions allegedly placed on claimant. The vocational expert did not determine what restrictions claimant in fact had. Rather, it was the ALJ's function to first determine what medical restrictions claimant was under and how they affected his residual functional capacity, and then to determine whether the vocational expert had identified a significant number of jobs in a relevant market given these restrictions. In the instant case, the ALJ rejected Dr. Sherman's conclusions regarding non-cardiac restrictions and therefore did not rely on the vocational expert's response to the hypothetical question which assumed such restrictions. We find that the ALJ's findings, both as to residual functional capacity and jobs in the national economy, are supported by substantial evidence.
 
 
 35
 Having rejected each of claimant's arguments, we AFFIRM the judgment of the district court.