856 F.2d 193
 Unpublished Disposition
NOTICE: Sixth Circuit Rule 24(c) states that citation of unpublished dispositions is disfavored except for establishing res judicata, estoppel, or the law of the case and requires service of copies of cited unpublished dispositions of the Sixth Circuit.
John C. CURRY, Plaintiff-Appellant,
v.
SECRETARY OF HEALTH & HUMAN SERVICES, Defendant-Appellee.
 No. 87-1779.
 United States Court of Appeals, Sixth Circuit.
 Aug. 29, 1988.
 
 Before MILBURN and BOGGS, Circuit Judges, and CONTIE, Senior Circuit Judge.
 PER CURIAM.
 
 
 1
 Claimant John Curry appeals from the judgment of the district court in favor of the Secretary of Health and Human Services (the Secretary) in this action seeking review of the final decision of the Secretary under 42 U.S.C. Sec. 405(g) (1982). For the following reasons, we affirm the judgment of the district court.
 
 I.
 
 2
 Claimant filed an application for Supplemental Security Income benefits under Title XVI of the Social Security Act (the Act), 42 U.S.C. Sec. 1381(a), on December 6, 1985. His application was denied initially and upon reconsideration. He requested a hearing before an Administrative Law Judge (ALJ). His request was granted, and he received a hearing on August 13, 1986. At the hearing, claimant, his mother, Dora Curry, and a vocational expert, William Kiser, testified. Claimant also presented various medical records. On August 29, 1986, the ALJ found claimant not disabled because he retained the capacity to perform sedentary jobs with a sit/stand option that required the use of only one hand and a significant number of such jobs existed in the economy. On January 2, 1987, the Appeals Council denied claimant's request for review, leaving the ALJ's decision to stand as the final decision of the Secretary. Claimant sought review of this decision in the United States District Court for the Eastern District of Michigan. The matter was referred to a magistrate pursuant to 28 U.S.C. Sec. 636(b)(1)(B). The magistrate considered the parties' cross motions for summary judgment, and recommended that the findings of the Secretary be affirmed. On July 8, 1987, the district court after de novo review, accepted the magistrate's recommendation and findings and ordered entry of judgment for the Secretary. After the magistrate issued his report and recommendation, claimant submitted to the court a psychological evaluation that was conducted by Dr. Margaret Cappone on May 5, and June 2, 1987. The district court did not consider this evidence when it reached its decision. Claimant timely appeals from this judgment.
 
 
 3
 Claimant was born on March 12, 1967. At the time of the hearing, he was nineteen years old. He had completed the eleventh grade and was attending the twelfth grade. He had no previous work experience. Claimant received a brachial plexus[1] injury at birth which severely limited the use of his left arm and shoulder. This injury is the basis of claimant's claim of disability.
 
 
 4
 At his hearing, claimant carried his left arm in a sling. He had formerly worn a cast on the arm while he was a teenager. Claimant is right handed. He testified that he had problems taking care of his personal needs. Although he could feed himself, he needed help dressing and bathing. He stated that he could stand for a couple of hours with moving around. While he stated that he had difficulty sitting, he did not quantify his problem. He stated that he had pain in his back, shoulders and right arm, and an electricity feeling in his left leg. The ALJ noted that claimant "pushed off from the chair in a grossly normal manner," that "his right limb movements were grossly normal" and that he walked with "an antalgic gait."
 
 
 5
 Claimant's mother testified that he was the oldest of seven children. She testified that his left side problems were the result of a difficult delivery at birth. She stated that he had been in a cast as an infant and that his condition had deteriorated as he grew older. She testified that claimant's state of mind had been bad and that he was really depressed at times.
 
 
 6
 The following medical evidence was also admitted at the hearing.
 
 
 7
 On April 15, 1985, Dr. Frank Chin reported that claimant stated that he suffered a dislocation during childbirth, which resulted in his present deformity and limited range of motion. A physical examination revealed a marked diminished range of motion. Dr. Chin noted that the condition gave claimant "a great deal of pain" and prescribed medication in the form of Motrin 400 mg.
 
 
 8
 On April 30, 1985, claimant was examined by Dr. T.A. Norris. Dr. Norris reported that claimant appeared "as a healthy young man who does not seem to be in any particular distress, except that his left arm is allowed to dangle down at his side." Claimant removed his shirt without difficulty and there was no visible muscle atrophy. Claimant demonstrated passive abduction to 80 degrees and when his left arm was released, it "did not fall rapidly to the dependent position but came down in a slow arc with some obvious control." Dr. Norris gave the following impression:
 
 
 9
 Specifically, I don't find any actual motor losses, or atrophies, and [musculatures] definitely don't show visible changes. ... the joints however all move passively without any force compatible with stretching any soft tissue contractures, and when the extremity is placed in various elevated positions, there is obvious control to some extent in returning the arm back to the dependent position. I think there was very likely some early stretch injury, but I also feel that the arm is somehow being used more than the history might indicate because of the measurements and so on. I think it is also quite possible that it is not as flexible and strong as the right arm, but I also feel it has use capabilities which I was not able to see demonstrated. I think it would be fair and proper to say that this arm would not be suitable, as I saw it demonstrated today, for any attempts at heavy lifting or carrying, or for things requiring strong pushing and pulling and certainly things requiring overhead exertion, but I believe it has some capabilities as a helper arm. One would have to feel that it would not be a safe arm to depend on in any kind of climbing or operation of steering apparatus of motorized equipment, but it certainly has not lost total use.
 
 
 10
 On November 4, 1985, claimant was examined by Dr. Thepveera. Although claimant complained of left arm weakness, Dr. Thepveera reported that there was no muscle atrophy. His diagnosis was brachial plexus injury and depression. He referred claimant to Dr. Vansupa, who examined claimant on November 5, 1985. Dr. Vansupa reported that claimant's left arm was motionless and toneless. He found claimant's condition to be far beyond any neurosurgical intervention, and recommended rehabilitation services as a possible future management of claimant's problem.
 
 
 11
 In the physical therapy report it was noted that claimant's initial complaints were brachial plexus palsy of the right upper extremity, with intermittent pain in the left shoulder for the past five weeks. Passive range of motion of all joints in the left upper extremity were within normal limits.
 
 
 12
 The physical therapist reported that therapy would consist of a program of electrical stimulation directed toward a goal of decreasing claimant's pain.
 
 
 13
 The vocational expert, William Kiser, stated that if Curry's testimony was true he would not be able to work. However, he testified that, assuming Curry's age and education, and assuming that he has a useless upper left limb from birth, motionless and toneless from the proximal girdle down, with no reflex or sensation, there would be approximately 30,800 sedentary, unskilled jobs in the Saginaw, Midland, Bay City area that he could perform. These jobs require the use of only one hand and provide for a sit/stand option. They include positions such as bottle inspector, product examiner, and cashier. The vocational expert testified that the product examiner and cashier positions are "non-stressful" and that the bottle inspector jobs are "mild or not stressful."
 
 
 14
 In his decision, the ALJ made the following findings:
 
 
 15
 The medical evidence establishes that the claimant has the severe impairment of brachial plexus palsy limiting the use of his left upper extremity, but that he does not have an impairment or combination of impairments listed in, or medically equal to one listed in Appendix 1, Subpart P, Regulation No. 4.
 
 
 16
 The claimant's subjective complaints were not fully credible but have been taken into consideration in finding he has the residual functional capacity for sedentary work.
 
 
 17
 The claimant has the residual functional capacity to perform the physical exertion and nonexertional requirements of work except for those jobs involving use of the non-dominant upper extremity and not providing the sit/stand option (20 CFR 416.945).
 
 
 18
 The claimant's residual functional capacity for the full range of sedentary work is reduced by the above-named limitations....
 
 
 19
 Although the claimant's additional exertional limitations do not allow him to perform the full range of sedentary work, using the above-cited rule as a framework for decisionmaking, there are a significant number of jobs in the national economy which he could perform.
 
 
 20
 The claimant was not under a "disability," as defined in the Social Security Act, at any time through the date of this decision (20 CFR 416.920(f)).
 
 
 21
 Claimant essentially argues that this case should be remanded for consideration of the psychological evaluation, that the ALJ erred in failing to consider the combination of his impairments and in not obtaining the testimony of a medical advisor, and that the Secretary's findings are not supported by substantial evidence.
 
 II.
 A.
 
 22
 Claimant argues that this case should be remanded to the Secretary for consideration of the psychological evaluation prepared by Dr. Cappone.
 
 
 23
 A court may remand a case to the Secretary to consider additional evidence "only upon a showing that there is new evidence which is material and that there is good cause for the failure to incorporate such evidence into the record in a prior proceeding...." 42 U.S.C. Sec. 405(g). See Willis v. Secretary of Health and Human Servs., 727 F.2d 551, 554 (6th Cir.1984) (per curiam). In Willis, the claimant sought to have her case remanded for consideration of a psychiatric report she obtained after the ALJ denied her application. In affirming the district court's decision not to remand, this court made the following observations:
 
 
 24
 Furthermore, as noted above, the transcript of the hearing before the ALJ clearly indicates that counsel for the Appellant did not seek to have the record remain open until such time as other evidence could be made a part of the record. Nothing in the record indicates any good cause for the failure to elicit medical testimony from Dr. Giray, prior to the close of the proceedings before the ALJ. If counsel for Appellant believed there was evidence of a psychiatric condition in support of the claim of disability, that evidence should have been before the ALJ. Absent a demonstration of good cause to excuse the failure to incorporate this evidence in the original hearing, we cannot order a remand for the purposes of requiring the Secretary to consider new evidence. To do so would directly contravene the express language contained in the 1980 amendment to 42 U.S.C. Sec. 405(g).
 
 
 25
 Willis, 727 F.2d at 554.
 
 
 26
 In the instant case, Dr. Thepveera noted on more than one occasion that claimant was depressed. Also, claimant's mother gave testimony concerning her son's mental state. Thus, claimant cannot and does not claim that the onset of his psychological condition occurred after the hearing. Furthermore, claimant did not seek to keep the record open so that he could undergo psychological testing and obtain a report for the ALJ's consideration. In fact, he has not offered any explanation for his failure to submit the evidence in the prior proceeding. Absent a showing of good cause, we cannot order a remand for the purpose of requiring the Secretary to consider new evidence.
 
 B.
 
 27
 Claimant contends that the ALJ erred in failing to obtain the opinion of a medical advisor to consider the medical equivalency of his combined impairments. The Secretary argues that there was no error as the provisions of 20 C.F.R. 416.926(b) and Social Security Ruling 83-19 were followed by the ALJ.
 
 Section 416.926(b) provides as follows:
 
 28
 (b) Medical equivalence must be based on medical findings. We will always base our decision about whether your impairment(s) is medically equal to a listed impairment on medical evidence only. Any medical findings in the evidence must be supported by medically acceptable clinical and laboratory diagnostic techniques. We will also consider the medical opinion given by one or more physicians designated by the Secretary in deciding medical equivalence.
 
 
 29
 Social Security Ruling 83-19 provides in pertinent part as follows:
 
 
 30
 [t]he ALJ is responsible for deciding the ultimate legal question of whether the listing is met or equalled. As trier of the facts, the ALJ is not bound by the medical judgment of a 'designated' physician regarding medical equivalency. However, the judgment of a 'designated' physician on this issue on the same evidence before the ALJ must be received into the record as expert opinion evidence and given appropriate weight. Furthermore, to assure that proper consideration is given to a medical equivalency opinion from a physician designated by the Secretary, the ALJ must obtain an updated medical judgment from a medical advisor (interrogatories may be used) in the following circumstances:
 
 
 31
 1. When no additional medical evidence is received, but, in the opinion of the ALJ, the symptoms, signs, and laboratory findings reported in the record suggest that a judgment of equivalency may be reasonable.
 
 
 32
 2. When additional medical evidence is received which, in the opinion of the ALJ, may change the determination of the SSA-831 U5/SSA-833-U5 that the impairment(s) does not equal the listing.
 
 
 33
 The Secretary points to the signatures of Dr. William Sommerville on the initial Disability Determination and Transmittal (Form SSA-831-U5) and the signature of Dr. John Hoyt on the form prepared prior to the decision on reconsideration as "assurances that 'consideration by a physician designated by the Secretary has been given to the question of equivalence'." He also points to the fact that no new medical evidence was submitted to the ALJ, and we note that claimant has not shown that a judgment of equivalency may have been reasonable. Accordingly, the Secretary argues that claimant's allegation that the ALJ failed to consider all of his impairments in combination and that the ALJ improperly failed to secure the opinion of a medical advisor regarding the issue of medical equivalence is unsupported. We agree.
 
 
 34
 The ALJ considered the combination of claimant's impairments when determining that he was not disabled, as he found that claimant "does not have an impairment or combination of impairments listed in, or medically equal to one listed in Appendix 1, Subpart P, Regulation No. 4." Furthermore, the physician's signatures on the SSA-831-U5 forms are proof that a physician designated by the Secretary has considered whether the claimant's impairments are medically equivalent to an impairment described in the Listings. See Fox v. Heckler, 776 F.2d 738, 742 (7th Cir.1985). Accordingly, we find claimant's argument to be without merit.
 
 C.
 
 35
 The claimant's final arguments challenge the Secretary's findings that he had not met the listings found in Appendix 1, Subpart P and that he was not disabled based on his subjective complaints.
 
 
 36
 Section 405(g) specifies that the Secretary's factual findings are conclusive if supported by substantial evidence. " 'Substantial evidence' means "more than a scintilla. It means such relevant evidence as a reasonable mind might accept as adequate to support a conclusion.' " In determining whether the Secretary's findings are supported by substantial evidence, we must examine the evidence in the record "taken as a whole," and we " 'must take into account whatever in the record fairly detracts from its weight.' " If it is supported by substantial evidence, the Secretary's determination must stand regardless of whether the reviewing court would resolve the issues of fact in dispute differently.
 
 
 37
 Maziarz v. Secretary of Health and Human Servs., 837 F.2d 240, 243 (6th Cir.1987) (citations omitted).
 
 
 38
 Claimant argues that his impairments meet the listings at 20 C.F.R. Part 404, Subpart P, Appendix 1, Sections 1.13 and 12.04. Section 1.13 reads as follows:
 
 
 39
 1.13. Soft tissue injuries of an upper or lower extremity requiring a series of staged surgical procedures within 12 months after onset for salvage and/or restoration of major function of the extremity, and such major function was not restored or expected to be restored within 12 months after onset.
 
 
 40
 In the instant case, claimant has never had surgery on his left arm. He argues, however, that his severe soft tissue injuries, which go beyond the "pale of surgical salvage or restoration of major function since birth" meet the listings. The Seventh Circuit has discussed the loss of function argument as it applies to section 1.13.
 
 
 41
 First, a different listing directly addresses the loss of function of an extremity. Section 1.09 involves the loss of function due to neurological deficits, and for benefits it requires the loss of both hands, both feet, or one hand and one foot. Waite's interpretation of listing 1.13 would place it in conflict with listing 1.09 because a claimant who has permanently lost the use of an extremity would qualify for benefits under listing 1.13, but he would not meet the more specific requirements of listing 1.09. Likewise, Waite's reading of the regulations would make the two listings duplicative because a claimant paralyzed in two extremities would qualify under both listings. We do not think such anomalous results were intended.
 
 
 42
 Waite v. Bowen, 819 F.2d 1356, 1359 (7th Cir.1987). The court went on to conclude that section 1.13 requires the imposition of a series of surgical procedures, id., and because the claimant had not undergone such procedures he did not meet the listing found at section 1.13. Id. at 1360. We agree with this analysis, and because claimant has not undergone staged surgical procedures, he does not meet the section 1.13 listing.
 
 
 43
 Claimant argues in the alternative, that if he did not meet the section 1.13 listing, his depression and marked restriction of daily activities met the requirements of the listings.[2] Section 12.04 provides in pertinent part as follows:
 
 
 44
 12.04 Affective Disorders: Characterized by a disturbance of mood, accompanied by a full or partial manic or depressive syndrome. Mood refers to a prolonged emotion that colors the whole psychic life; it generally involves either depression or elation.
 
 
 45
 The required level of severity for these disorders is met when the requirements in both A and B are satisfied.
 
 
 46
 A. Medically documented persistence, either continuous or intermittent, of one of the following:
 
 
 47
 1. Depressive syndrome characterized by at least four of the following:
 
 
 48
 a. Anhedonia or pervasive loss of interest in almost all activities; or
 
 
 49
 b. Appetite disturbance with change in weight; or
 
 
 50
 c. Sleep disturbance; or
 
 
 51
 d. Psychomotor agitation or retardation; or
 
 
 52
 e. Decreased energy; or
 
 
 53
 f. Feelings of guilt or worthlessness; or
 
 
 54
 g. Difficulty concentrating or thinking; or
 
 
 55
 h. Thoughts of suicide; or
 
 
 56
 i. Hallucinations, delusions or paranoid thinking; ...
 
 AND
 
 57
 B. Resulting in at least two of the following:
 
 
 58
 1. Marked restriction of activities of daily living; or
 
 
 59
 2. Marked difficulties in maintaining social functioning; or
 
 
 60
 3. Deficiencies of concentration, persistence or pace resulting in frequent failure to complete tasks in a timely manner (in work settings or elsewhere); or
 
 
 61
 4. Repeated episodes of deterioration or decompensation in work or work-like settings which cause the individual to withdraw from that situation or to experience exacerbation of signs and symptoms (which may include deterioration of adaptive behaviors).
 
 
 62
 The brief statement of Dr. Thepveera that claimant is depressed is the only medical evidence of claimant's mental impairment. This evidence falls far short of establishing the criteria set forth in section 12.04. Therefore, claimant did not demonstrate that his mental impairment met the requirements of section 12.04.
 
 
 63
 Accordingly, we conclude that the Secretary's finding that claimant did not have a listed impairment is supported by substantial evidence.
 
 
 64
 Finally, claimant argues that the ALJ erred in finding that his subjective complaints did not establish disability.[3]
 
 
 65
 We review claimant's allegations of disabling pain under the following standard. Initially, there must be objective evidence of an underlying medical condition. If such evidence exists, there must be objective medical evidence to confirm the severity of the alleged pain arising from that condition or the objectively determined medical condition must be of a severity which can reasonably be expected to give rise to the alleged disabling pain. Duncan v. Secretary of Health & Human Servs., 801 F.2d 847, 853 (6th Cir.1986).
 
 
 66
 The Secretary concedes that there is objective evidence of an underlying medical condition, namely brachial plexus palsy. Therefore, the first prong of the Duncan test is satisfied. The Secretary argues, however, that the second prong has not been met, because there is no objective medical evidence to confirm the severity of the pain and the objective findings fail to reveal that claimant's condition is of such a severity that would reasonably give rise to such pain. We agree.
 
 
 67
 Although examining physicians have noted claimant's complaints of pain, none have diagnosed that the pain is disabling. Furthermore, Dr. Norris noted that when claimant's left arm was released it "did not fall rapidly to the dependent position but came down in a slow arc with some obvious control." Also, Dr. Norris and Dr. Thepveera reported that there was no muscle atrophy. Finally, the physical therapy records indicate that claimant demonstrated normal ranges of passive motion in his left arm. Consequently, the objective medical evidence does not reveal that claimant's condition is of such a severity as would reasonably be expected to give rise to the alleged pain. Accordingly, we conclude that the ALJ's finding that claimant is not disabled based on his subjective complaints is supported by substantial evidence.
 
 
 68
 For the foregoing reasons, we AFFIRM the judgment of the district court.
 
 
 
 [1]
 The brachial plexus is a thick network of nerves situated in the neck and axilla (armpit). Its branches descend into the arm, forearm and fingers
 
 
 [2]
 Claimant, apparently relying on an earlier version of the regulations, cites to the listing found at section 12.03 for this portion of his argument. The regulations were revised, however, and the correct listing for claimant's impairment is found at section 12.04
 
 
 [3]
 Claimant also argues that the ALJ engaged in "sit and squirm jurisprudence" whereby he decided that claimant was not disabled on the basis of his observations of claimant's demeanor and comportment at the hearing. See Weaver v. Secretary of Health and Human Servs., 722 F.2d 310, 312 (6th Cir.1983) (recognizing the thoroughly discredited nature of the "sit and squirm" test, and holding that the ALJ must cite some other evidence for denying a claim for pain in addition to personal observations). Claimant's argument is without merit. While the ALJ did make a credibility determination based on his observations of claimant at the hearing, he also thoroughly reviewed the medical evidence and specifically relied on the medical evidence in making his determination