**FILED**
**United States Court of Appeals**
**Tenth Circuit**

**July 8, 2008**

**Elisabeth A. Shumaker**
**Clerk of Court**

**UNITED STATES COURT OF APPEALS**

**FOR THE TENTH CIRCUIT**

---

LYDIA G. BRESCIA,

        Plaintiff-Appellant,

v.

MICHAEL J. ASTRUE, Commissioner
of the Social Security Administration,

        Defendant-Appellee.

No. 07-4234
(D.C. No. 2:06-CV-00793-DN)
(D. Utah)

---

**ORDER AND JUDGMENT**[*]

---

Before **BRISCOE**, **PORFILIO**, and **BALDOCK**, Circuit Judges.

---

The administrative law judge (ALJ) denied Lydia Brescia's applications for

Social Security disabled widow's benefits and supplemental security income

payments. The Appeals Council denied review, making the ALJ's decision the

final agency decision, and the district court affirmed. Ms. Brescia now appeals to

---

[*]    After examining the briefs and appellate record, this panel has determined
unanimously to grant the parties' request for a decision on the briefs without oral
argument. *See* Fed. R. App. P. 34(f); 10th Cir. R. 34.1(G). The case is therefore
ordered submitted without oral argument. This order and judgment is not binding
precedent, except under the doctrines of law of the case, res judicata, and
collateral estoppel. It may be cited, however, for its persuasive value consistent
with Fed. R. App. P. 32.1 and 10th Cir. R. 32.1.

this court, which has jurisdiction under 42 U.S.C. § 405(g) and 28 U.S.C. § 1291. Applying our limited standard of review in Social Security cases, we affirm.

In order to obtain disabled widow's benefits and/or supplemental security income payments, Ms. Brescia must establish that she is "disabled" as that term is defined for Social Security purposes. *See* 20 C.F.R. §§ 404.1501, 404.1505(a), 416.901, 416.905(a). After holding a hearing and applying the five-step sequential evaluation process, the ALJ determined that: (1) Ms. Brescia was not engaging in any substantial gainful activity; (2) she suffered from some severe impairments and a number of non-severe impairments; (3) none of her impairments met or equaled any impairment in the listing of impairments; (4) she retained the residual functional capacity (RFC) "to perform a significant range of light work, occasionally climbing, balancing, stooping, kneeling, crouching or crawling, having limited communication with [] others in loud places due to hearing loss and avoiding respiratory irritants due to her respiratory impairments," Aplt. App. at 26, but that she had no past relevant work to which she could return; and (5) based on testimony by a vocational expert (VE), she could perform other work that exists in significant numbers in the national economy. Consequently, the ALJ determined that she was not disabled and not entitled to benefits.

On appeal, Ms. Brescia argues that the ALJ improperly determined several of her impairments did not qualify as "severe" impairments, improperly rejected

the opinion of her treating physician, improperly evaluated her credibility, failed to consider lay witness statements in the record, and failed to identify specific jobs available in the economy in significant numbers that she could perform. "We review the Commissioner's decision to determine whether the factual findings are supported by substantial evidence and whether correct legal standards were applied." *Barnett v. Apfel*, 231 F.3d 687, 689 (10th Cir. 2000). In our review, "[w]e may neither reweigh the evidence nor substitute our judgment for that of the agency." *Id.* (quotation omitted).

### *Impairments*

The ALJ concluded that Ms. Brescia suffers from the severe impairments of asthma/chronic obstructive pulmonary disease (COPD) and a hearing loss. He also acknowledged that she suffers from "a disorder of the spine, diabetes mellitus, a personality disorder, vision problems, intermittent uticaria, obesity and sleep apnea," but stated that those impairments "are considered non-severe for our purposes here." Aplt. App. at 23. He further stated that the alleged depression, attention deficit hyperactivity disorder, Lyme disease, and thoracic outlet syndrome "are not clearly medically determinable and are therefore not further considered as part of this decision." *Id.* Ms. Brescia argues that the ALJ committed reversible error by not accepting her sleep apnea, obesity, degenerative disk disease, and hand and arm pain and numbness as severe impairments.

"We can easily dispose of" an argument that the ALJ should have found additional impairments to be severe because "[t]he ALJ . . . made an explicit finding that [the claimant] suffered from severe impairments. That was all the ALJ was required to do in that regard." *Oldham v. Astrue*, 509 F.3d 1254, 1256 (10th Cir. 2007). Once an ALJ has found that a claimant has at least one severe impairment, a failure to designate another disorder as "severe" at step two does not constitute reversible error because, under the regulations, the agency at later steps "consider[s] the combined effect of all of [the claimant's] impairments without regard to whether any such impairment, if considered separately, would be of sufficient severity." 20 C.F.R. §§ 404.1523, 416.923; *see also id.* §§ 404.1525(e), 416.945(e); *Maziarz v. Sec'y of Health & Human Servs.*, 837 F.2d 240, 244 (6th Cir. 1987).

As in *Oldham*, Ms. Brescia's true quarrel is not with the step-two findings concerning which of her impairments are severe, but with the step-four and step-five findings concerning her RFC and her ability to do any work. *See Oldham*, 509 F.3d at 1256-57. Notwithstanding the ALJ's earlier statement that her thoracic outlet syndrome was "not further considered," Aplt. App. at 23, in determining her RFC, he considered those effects of Ms. Brescia's sleep apnea, obesity, degenerative disk disease, and hand and arm pain that were supported in the medical record, in conjunction with the impairments that he deemed severe. *See id.* at 24-26. We find no reversible error.

### *Opinion of Treating Physician*

Ms. Brescia also argues that the ALJ improperly rejected the opinion of her treating physician, Dr. Ellen Gardner. The doctor indicated that Ms. Brescia suffers, among other symptoms, chronic neck and back pain, fatigue, and shortness of breath, and stated that she could walk one-third to one-half of a block without resting, sit for sixty minutes at a time, and stand for ten minutes at a time, but she had to lie down for several hours a day. In declining to accept these functional limitations, the ALJ stated that "the doctor's progress notes do not support the need for such functional limitations and appeared to accept the claimant's subjective allegations as fact." *Id.* at 27.

Generally, the ALJ should give greater weight to the opinions of doctors who have treated the claimant than those who have not. *Watkins v. Barnhart*, 350 F.3d 1297, 1300 (10th Cir. 2003). "The ALJ is required to give controlling weight to the opinion of a treating physician as long as the opinion is supported by medically acceptable clinical and laboratory diagnostic techniques and is not inconsistent with other substantial evidence in the record." *Hamlin v. Barnhart*, 365 F.3d 1208, 1215 (10th Cir. 2004); *see also* Social Security Ruling (SSR) 96-2p, 1996 WL 374188, at *2. But if either of these requirements is not met, the ALJ is not required to give the opinion controlling weight; in fact, it may be an error to do so. *Watkins*, 350 F.3d at 1300; SSR 96-2p, 1996 WL 374188, at *2. Instead, the ALJ must decide whether to reject the opinion altogether or assign it

some lesser weight. *Watkins*, 350 F.3d at 1300-01. "[T]he ALJ must 'give good reasons in the notice of determination or decision' for the weight he ultimately assigns the opinion." *Id.* at 1301 (quoting 20 C.F.R. § 404.1527(d)(2)) (alteration omitted).

It does not appear that the ALJ entirely rejected Dr. Gardner's opinion regarding Ms. Brescia's fatigue and back pain. For example, he "[gave] the claimant the benefit of the doubt that sleep apnea is a valid diagnosis," Aplt. App. at 25, and he acknowledged that she "has a chronic degenerative disc disease that causes only intermittent discomfort rather than persistent pain requiring ongoing treatment," *id.* at 26. But he did reject the functional limitations that Dr. Gardner set forth. In doing so, he indicated that Dr. Gardner's opinion was based on Ms. Brescia's subjective allegations, not medically acceptable clinical and laboratory diagnostic techniques. Thus, he gave a reason supported by the law, *see Watkins*, 350 F.3d at 1300, SSR 96-2p, 1996 WL 374188, at *2, and the record, *see* Aplt. App. at 142-46. This issue is not a basis for reversal.

### *Credibility*

Ms. Brescia also challenges the ALJ's evaluation of her credibility. She contends that the ALJ's evaluation was not linked to substantial evidence in the record and that the ALJ did not specifically address her allegations, instead "engag[ing] in a wholesale rejection of all of her testimony based on an assertion

that her daily activities were inconsistent with a disabled individual." Aplt. Br. at 30.

We have held that an ALJ's "[f]indings as to credibility should be closely and affirmatively linked to substantial evidence and not just a conclusion in the guise of findings." *Kepler v. Chater*, 68 F.3d 387, 391 (10th Cir.1995) (quotation omitted; alteration in original). In making a credibility assessment, the ALJ should consider such factors as:

> the levels of medication and their effectiveness, the extensiveness of the attempts (medical or nonmedical) to obtain relief, the frequency of medical contacts, the nature of daily activities, subjective measures of credibility that are peculiarly within the judgment of the ALJ, the motivation of and the relationship between the claimant and other witnesses, and the consistency or compatibility of nonmedical testimony with objective medical evidence.

*Id.* (quotation omitted).

The ALJ sufficiently explained the link between the evidence and his determination that Ms. Brescia's testimony was not entirely credible. After thoroughly reviewing Ms. Brescia's medial history, he explained that the medical evidence, her own description of her activities, and the fact that she quit her last job because of transportation issues, not disability, simply were incompatible with her claim that she is not able to perform any work. Having carefully reviewed the record, we see no basis to reverse the ALJ's adverse credibility determination.

### *Lay Witness Testimony*

Ms. Brescia notes that her sister and a friend provided written descriptions of her limitations to the ALJ and contends that he ignored this evidence. While the ALJ did not explicitly discuss the statements of Ms. Brescia's sister and friend, we do not believe this omission is grounds for remand given the nature of their evidence, which was largely cumulative of Ms. Brescia's testimony and written statements. *See Adams v. Chater*, 93 F.3d 712, 715 (10th Cir. 1996) (rejecting a rule requiring an ALJ to make specific written findings concerning each witness's credibility); *Clifton v. Chater*, 79 F.3d 1007, 1009-10 (10th Cir. 1996) (holding that an ALJ is not required to discuss every piece of evidence). Further, where, as here, the ALJ's decision states that he considered all of the evidence, "our general practice, which we see no reason to depart from here, is to take a lower tribunal at its word when it declares that it has considered a matter." *Hackett v. Barnhart*, 395 F.3d 1168, 1173 (10th Cir. 2005).

### *Jobs Available in the Economy*

Finally, Ms. Brescia contends that the ALJ failed to identify specific jobs that she could perform because the VE's testimony was not based on an accurate hypothetical question that included all of her limitations. She points out that the VE testified that a need to lie down for several hours each day "'would rule out all jobs.'" Aplt. Br. at 36 (quoting Aplt. App. at 391).

The limitations that Ms. Brescia argues should have been included in the hypothetical were limitations that the ALJ did not accept to be true. A hypothetical is sufficient when it contains "all of the limitations found to exist by the ALJ." *Barnett*, 231 F.3d at 690. The ALJ was not required to accept the VE's opinion regarding the availability of jobs to a person required to lie down for several hours each day, as he concluded that this limitation did not exist. *See id.*; *Bean v. Chater*, 77 F.3d 1210, 1214 (10th Cir. 1995). The VE's testimony that at least three jobs would be available to a hypothetical person of Ms. Brescia's age, education, and work history, with the RFC determined by the ALJ, provides substantial evidence for the ALJ's step-five determination.

The judgment of the district court is AFFIRMED.

Entered for the Court

Mary Beck Briscoe
Circuit Judge

-9-