NOT RECOMMENDED FOR FULL-TEXT PUBLICATION
File Name:  19a0193n.06

Case No. 18-5831

UNITED STATES COURT OF APPEALS
FOR THE SIXTH CIRCUIT

|  |  |  |
|---|---|---|
| JONA KESSANS, | ) | FILED<br>Apr 16, 2019<br>DEBORAH S. HUNT, Clerk |
|  | ) |  |
| Plaintiff-Appellant, | ) |  |
|  | ) | ON APPEAL FROM THE UNITED |
| v. | ) | STATES DISTRICT COURT FOR |
|  | ) | THE EASTERN DISTRICT OF |
| COMMISSIONER OF SOCIAL SECURITY, | ) | KENTUCKY |
|  | ) |  |
| Defendant-Appellee. | ) | **OPINION** |
|  | ) |  |

BEFORE:  MERRITT, KETHLEDGE, and NALBANDIAN, Circuit Judges.

NALBANDIAN, Circuit Judge.  Jona Kessans appeals the district court's judgment affirming an administrative law judge's denial of her application for Social Security disability insurance benefits.  Because substantial evidence supports the ALJ's decision, we AFFIRM.

I.

In March 2013, Kessans applied for Social Security disability insurance benefits, alleging a disability onset date of October 5, 2010.  The Commissioner denied Kessans's application and later denied Kessans's request for reconsideration.  So Kessans requested a hearing before an ALJ.

During the November 2016 hearing, Kessans testified that her PTSD, anxiety, panic attacks, and depression forced her to stop working as a human performance technology consultant in 2012.  Kessans described some of her symptoms, including that she will spontaneously slip into a "semi-catatonic state," which can last as long as week.  (R. 5–3, Admin. R. at 57.)  Kessans explained that these states occur monthly and that when she is in one, she cannot process her

surroundings. As to her daily routine, Kessans stated that "I don't go out of my house, if I can avoid it," and that she usually stays inside and reads. (*Id.* at 61–62.) And when her attorney asked how often she has a good day, Kessans responded, "all days are bad days." (*Id.* at 63.)

George Coleman, a third-party vocational expert, was the only other person to testify at the hearing. The ALJ asked Coleman three hypothetical questions to assess whether there are jobs in the national economy that someone like Kessans could perform. For each question, the ALJ described a hypothetical individual with physical and mental limitations that might interfere with that individual's ability to work. The ALJ also modified the limitations in each question—in other words, each hypothetical individual had slightly different limitations. Coleman explained that there would be work for the first two hypothetical individuals but not for the third hypothetical individual.

The ALJ denied Kessans's application for benefits. He made several findings of fact, including that Kessans had these impairments: disc disease, degenerative joint disease, arthropathy, obesity, asthma, headaches, affective disorder, anxiety disorder, personality disorder, and Asperger's syndrome. But the ALJ explained that those impairments did not meet or medically equal a listed impairment under Social Security Administration ("SSA") regulations and that Kessans had the same mental and physical limitations as the individual he described in his first hypothetical question. Thus, the ALJ concluded that Kessans could perform light work, so long as that work did not require complex decision-making or frequent interaction with other colleagues.

After Kessans appealed the ALJ's decision to the district court, both parties moved for summary judgment. The district court ruled for the Commissioner and affirmed the ALJ's ruling. Kessans now appeals that decision.

II.

In Social Security benefits cases, we review the district court's decision de novo. *Kyle v. Comm'r of Soc. Sec.*, 609 F.3d 847, 854 (6th Cir. 2010). Our ultimate review, however, is both limited and deferential: we must determine whether the ALJ applied the correct legal standard and made factual findings that are supported by substantial evidence. *Gayheart v. Comm'r of Soc. Sec.*, 710 F.3d 365, 374 (6th Cir. 2013). Substantial evidence is "such relevant evidence as a reasonable mind might accept as adequate to support a conclusion." *Id.* (internal quotation marks and citation omitted). Moreover, we must affirm the Commissioner's decision if it is supported by substantial evidence, "even if substantial evidence would also have supported the opposite conclusion." *Id.* (citing *Colvin v. Barnhart*, 475 F.3d 727, 730 (6th Cir. 2007)).

III.

On appeal, Kessans raises these three arguments about the ALJ's decision: (1) the ALJ improperly discounted her treating physician's opinion; (2) the ALJ improperly discounted the Veterans Administration's earlier determination that she is partially disabled; and (3) the ALJ improperly discounted the vocational expert's answers at the hearing. We consider each argument in turn.

A.

The first issue is whether the ALJ gave the appropriate level of deference to Kessans's psychiatrist, Julie Kepner, M.D., who has treated Kessans since June 2011. Under the "treating physician rule," the ALJ must give controlling weight to the opinion of the claimant's treating physician if it is "well-supported by medically acceptable clinical and laboratory diagnostic techniques and is not inconsistent with the other substantial evidence in [the] case record." 20 C.F.R. § 404.1527(c)(2); *Smith v. Comm'r of Soc. Sec.*, 482 F.3d 873, 877 (6th Cir. 2007).

3

Kepner provided the ALJ with a mental impairment questionnaire and two letters about Kessans's medical condition—one from December 2015 and a second from February 2016. Together, those documents form Kepner's medical opinion on Kessans's disability. In her first letter, Kepner explained that Kessans's PTSD and major depressive disorder cause frequent panic attacks and chronic suicidal ideation, leaving Kessans "unable to run errands" and "severely impaired" in her ability to work near others. (R. 7–5, Admin. R. at 3624.) Kepner concluded that the "loss of benefits would significantly jeopardize [Kessans's] stability and threaten her access to life sustaining necessities." (*Id.*) Kepner then wrote a second letter explaining that although Kessans has received outpatient and inpatient therapy, she has largely withdrawn from society to avoid exacerbating her condition. Thus, Kepner stated that "[i]n [her] opinion, Ms. Kessans [*sic*] prognosis is guarded to poor as it relates to being able to rejoin the workplace." (*Id.* at 3622.)

The ALJ did not give Kepner's opinion controlling weight. Instead, the ALJ explained that he would give "[l]ittle consideration" to her opinion, in part because of its inconsistency with Kessans's life experiences. (R. 5–3, Admin. R. at 24–25.) Substantial evidence supports that decision.

Record evidence suggests that Kessans is as much a globetrotter as a homebody. In May 2011, for example, a suicide prevention case manager called Kessans to ask about her wellbeing. Kessans took the call from New York City, where she was attending an Asperger's fundraiser and conducting research related to her studies at Northern Kentucky University.[1] Later that month, Kessans met with a case manager and reported her plans to move to Asheville, North Carolina,

---

[1] The record contains little information about Kessans's attendance at Northern Kentucky University, although Kessans told her case manager in June 2011 that her semester had "ended well." (R. 5–6, Admin. R. at 1180.) Kepner's letters do not mention the fact that Kessans attended university classes after the alleged onset of her disability.

which she described as a friendlier community for people with Asperger's. But until she secured an apartment in Asheville, Kessans planned to travel "back and forth" between North Carolina and her home outside Cincinnati. (R. 5–6, Admin. R. at 1181.)

Kessans has not limited her travel to the United States, either. In 2011, Kessans reported that she received a research scholarship to travel to South Korea for two months. It is unclear whether Kessans took that trip, but notes from several of Kessans's medical providers leave no room for doubt that Kessans traveled abroad well after the alleged onset of her disability in October 2010. Clinical social worker Susan McIlvain documented Kessans's account of a recent trip with friends, which Kessans described during a June 2013 therapy session. And McIlvain's notes from a July 2013 session describe Kessans as being "in good spirits" after returning from a trip to Cuba. (R. 7–4, Admin. R. at 2502.) During that same session, Kessans told McIlvain that she was "doing well" and "excited" for her trip to the Philippines, where she planned to participate in an all-female co-op and teach computer literacy at an English-speaking school for a year. (*Id.*) The record suggests that Kessans did, in fact, travel to the Philippines. According to treatment notes from an April 2015 visit to an orthopedic surgeon, Kessans explained that she runs a charity out of the Philippines and lives there for most of the year.

No matter what this evidence says about Kessans's alleged disability, it contradicts Kepner's opinion that Kessans cannot function outside her home. The justification for the treating physician rule is that a medical professional who has examined the claimant and treated her condition over a long period "will have a deeper insight" into the claimant's condition than a medical professional who has examined only the claimant's medical records. *Austin v. Comm'r of Soc. Sec.*, 714 F. App'x 569, 572 (6th Cir. 2018). But contradictions between the treating physician's opinion and other record evidence undermine the assumption that the treating

physician's insights are superior—and there is no shortage of contradictions here.[2] In sum, the ALJ did not err in his assessment of Kepner's opinion.

B.

Kessans also argues that the ALJ did not give appropriate weight to the Veterans Administration's January 2011 determination that she has a "70% service connected disability due to PTSD." (R. 5–3, Admin. R. at 26.) We disagree. As SSA regulations explain, government agencies have different criteria for determining whether someone is disabled. Thus, one agency's disability determination is not binding on the SSA. 20 C.F.R. § 404.1504. Still, our court has explained that an ALJ should "at least consider a VA's disability decision and explain reasons for the weight she assigns to it." *Joseph v. Comm'r of Soc. Sec.*, 741 F. App'x 306, 310 (6th Cir. 2018) (citing *LaRiccia v. Comm'r of Soc. Sec.*, 549 F. App'x 377, 388 (6th Cir. 2013)). The ALJ did exactly that. He acknowledged the VA's disability rating but explained that the VA uses different standards for making disability determinations and that the VA's records on Kessans contained neither function-by-function analysis nor language describing how Kessans's PTSD limits her ability to work. Even so, the ALJ gave the VA's decision "[s]ome consideration," crediting it as evidence that Kessans has "severe mental impairment." (R. 5–3, Admin. R. at Tr. 26–27.) We find no error in that decision.

---

[2] Kessans has identified two cases in which we ordered an award of benefits because the ALJ failed to give controlling weight to the treating physician's opinion. *Tuohy v. Sec'y of Health & Human Servs.*, 34 F.3d 1068 (6th Cir. 1994) (unpublished table decision); *Block v. Sec'y of Health & Human Servs.*, 793 F.2d 1290 (6th Cir. 1986) (unpublished table decision). But neither case supports her argument. In both, the ALJ failed to defer to a treating physician's opinion despite the lack of any contradictory record evidence. Here, there are significant discrepancies between Kepner's opinion and the record evidence about Kessans's life experiences.

C.

Kessans's final argument concerns the testimony of George Coleman, the vocational expert who answered the ALJ's hypothetical questions at the November 2016 hearing. The ALJ described three hypothetical individuals—each with different limitations—and asked Coleman whether there were jobs in the national economy that they could perform. Coleman explained that the first two hypothetical individuals could find employment—but that the third hypothetical individual could not. In his decision, the ALJ concluded that Kessans had the same limitations as the first hypothetical individual he described. On appeal, Kessans claims that Coleman's response to the ALJ's third hypothetical question offers substantial evidence that Kessans is disabled. We find that argument unavailing.

Kessans's argument confuses the roles of the ALJ and the vocational expert. The vocational expert "d[oes] not determine what restrictions claimant in fact had." *Maziarz v. Sec'y of Health & Human Servs.*, 837 F.2d 240, 247 (6th Cir. 1987). Instead, it is the ALJ's role to "determine what medical restrictions claimant was under and how they affected his residual functional capacity, and then to determine whether the vocational expert had identified a significant number of jobs in a relevant market given these restrictions." *Id.*

As Kessans notes, a vocational expert's answer to a hypothetical question serves as substantial evidence of the claimant's disability (or lack thereof). *See, e.g.*, *Ealy v. Comm'r of Soc. Sec.*, 594 F.3d 504, 516 (6th Cir. 2010). But that rule applies *only if* the ALJ's question "accurately portray[s] a claimant's physical and mental impairments," *id.* (citing *Howard v. Comm'r v. Soc. Sec.*, 276 F.3d 235, 241 (6th Cir. 2002)), and the ALJ need not identify the claimant's precise limitations before posing hypothetical questions to the vocational expert. *Maziarz*, 837 F.2d at 247; *Rudd v. Comm'r of Soc. Sec.*, 531 F. App'x 719, 730 (6th Cir. 2013).

Indeed, the ALJ may pose a question involving a hypothetical individual with several limitations—and then later decide that those limitations differed from the claimant's limitations. *See, e.g.*, *Maziarz*, 837 F.2d at 247. That does not mean that the vocational expert's answer about the *hypothetical individual* binds the ALJ. To the contrary, the ALJ may well conclude that the vocational expert's answer is irrelevant to whether there are jobs in the national economy that the *claimant* can perform. *Id.* To hold otherwise would effectively eliminate the ALJ's ability to ask any questions about a hypothetical individual unless he had identified the exact contours of the claimant's disability by the time of the hearing. We conclude that substantial evidence supports the ALJ's decision.

IV.

For these reasons, we AFFIRM the district court's judgment.