**NOT RECOMMENDED FOR FULL-TEXT PUBLICATION**
File Name: 09a0827n.06

**No. 09-5193**

**UNITED STATES COURT OF APPEALS
FOR THE SIXTH CIRCUIT**

**FILED**
**Dec 22, 2009**
LEONARD GREEN, Clerk

|  |  |  |
|---|---|---|
| AHMED HASSAN NEJAT, | ) | |
| | ) | |
| Plaintiff-Appellant, | ) | |
| | ) | |
| v. | ) | ON APPEAL FROM THE UNITED |
| | ) | STATES DISTRICT COURT FOR THE |
| COMMISSIONER OF SOCIAL SECURITY, | ) | MIDDLE DISTRICT OF TENNESSEE |
| | ) | |
| Defendant-Appellee. | ) | |

Before:  O'CONNOR, Associate Justice (Ret.);[*]  MOORE and COOK, Circuit Judges.

COOK, Circuit Judge.  Ahmad Hassan Nejat appeals the Social Security Administration's ("SSA") denial of his application for Supplemental Security Income ("SSI") benefits, contending that its decision violated the treating source regulation and lacked substantial evidentiary support.  We disagree with these contentions and affirm.

I.

Nejat is a Kurdish immigrant from Iran.  During the 1980s, when Iraq invaded Iran, he took up arms against the invading Iraqis.  After sustaining multiple gunshot wounds, Nejat fled with his family to Turkey and then emigrated to the United States in 1996.  Just a few months after arriving

---

[*] The Honorable Sandra Day O'Connor, Associate Justice of the United States Supreme Court (Ret.), sitting by designation.

in the United States, Nejat applied for SSI benefits, identifying multiple medical problems, including gunshot wounds to his arms, legs, and chest, depression, fatigue, and a nervous condition. The SSA denied his claim.

Then, following a wrist injury on the job at a Nashville hotel, Nejat again applied for SSI benefits, citing the date of his wrist injury as the onset of disability. The instant appeal arises out of this second application for benefits that alleged disability based on Nejat's work injury in addition to the same pre-existing war injuries listed in his prior application.

After the SSA denied Nejat's second claim for benefits both initially and on reconsideration, Nejat appeared before an ALJ for an appeal hearing. At the hearing, the ALJ reviewed medical records and residual functional capacity ("RFC") assessments from treating physicians as well as both examining and non-examining consultative physicians, and heard testimony from Nejat and a vocational expert. Evaluating that evidence in the five-step context required by 20 C.F.R. §§ 404.1520 and 416.920, the ALJ denied Nejat's claim, concluding Nejat retained an ability to perform jobs existing in significant numbers in the economy.

The Appeals Council's denial of Nejat's request for review of the ALJ's decision exhausted his administrative remedies and finalized the decision of the Commissioner of Social Security. Nejat then sued in district court under 42 U.S.C. § 405(g). The Magistrate Judge recommended affirming the Commissioner's decision and the district court adopted the Magistrate's Report and Recommendation. Nejat now appeals.

II.

We review the decision of the district court de novo, *White v. Comm'r of Soc. Sec*., 572 F.3d 272, 281 (6th Cir. 2009) (citation omitted), but will affirm the Commissioner's conclusions absent a determination that the ALJ failed to apply the correct legal standard or made findings of fact unsupported by substantial evidence. *Rogers v. Comm'r of Soc. Sec.*, 486 F.3d 234, 241 (6th Cir. 2007) (citing 42 U.S.C. § 405(g)). Courts define substantial evidence as "such relevant evidence as a reasonable mind might accept as adequate to support a conclusion." *Richardson v. Perales*, 402 U.S. 389, 401 (1971) (internal quotation marks and citation omitted). "The substantial evidence standard presupposes that there is a 'zone of choice' within which the Secretary may proceed without interference from the courts." *Felisky v. Bowen*, 35 F.3d 1027, 1035 (6th Cir. 1994) (quoting *Mullen v. Bowen*, 800 F.2d 535, 545 (6th Cir. 1986) (en banc)). Thus, where substantial evidence supports the ALJ's decision, we defer to that finding, even if the record contains "substantial evidence . . . that would have supported an opposite conclusion." *Key v. Callahan*, 109 F.3d 270, 273 (6th Cir. 1997).

III.

To be considered "disabled" under the Social Security Act, a person must be "unable to engage in any substantial gainful activity by reason of any medically determinable physical or mental impairment which can be expected to result in death or which has lasted or can be expected to last for a continuous period of not less than twelve months." 42 U.S.C. § 1382c(a)(3)(A). The Act further provides that:

> [a]n individual shall be determined to be under a disability only if his physical or mental impairment or impairments are of such severity that he is not only unable to do his previous work but cannot, considering his age, education, and work experience, engage in any other kind of substantial gainful work which exists in the national economy. 42 U.S.C. § 423(d)(2)(A).

In applying the above standard, an ALJ must follow the five-step analysis set forth in 20 C.F.R. § 404.1520(a)(4) and summarized by this court as follows:

1. If claimant is doing substantial gainful activity, he is not disabled.

2. If claimant is not doing substantial gainful activity, his impairment must be severe before he can be found to be disabled.

3. If claimant is not doing substantial gainful activity and is suffering from a severe impairment that has lasted or is expected to last for a continuous period of at least twelve months, and his impairment meets or equals a listed impairment, claimant is presumed disabled without further inquiry.

4. If claimant's impairment does not prevent him from doing his past relevant work, he is not disabled.

5. Even if claimant's impairment does prevent him from doing his past relevant work, if other work exists in the national economy that accommodates his residual functional capacity and vocational factors (age, education, skills, etc.), he is not disabled.

*Walters v. Comm'r of Soc. Sec.,* 127 F.3d 525, 529 (6th Cir. 1997). The claimant bears the burden of proof at steps one through four. *Id.* The burden then shifts to the Commissioner at step five to "identify a significant number of jobs in the economy that accommodate the claimant's residual functional capacity (determined at step four) and vocational profile." *Jones v. Comm'r of Soc. Sec.,* 336 F.3d 469, 474 (6th Cir. 2003).

No. 09-5193
*Nejat v. Comm'r*

A.

Nejat first finds error in the ALJ's step two severity findings, arguing that the ALJ incorrectly classified several of his impairments as non-severe and failed to comply with Social Security Ruling 02-1p[1] when evaluating Nejat's alleged obesity. We find both claims meritless.

At step two, the Commissioner must determine whether the claimant has a severe impairment. *See* 20 C.F.R. § 404.1520(a)(4)(ii). This circuit construes the step two severity regulation as a "*de minimis* hurdle," *Rogers*, 486 F.3d at 243 n.2 (internal quotation marks and citation omitted), intended to "screen out totally groundless claims." *Farris v. Sec'y of Health & Human Servs.*, 773 F.2d 85, 89 (6th Cir. 1985). Thus, if an impairment has "more than a minimal effect" on the claimant's ability to do basic work activities, the ALJ must treat it as "severe." Soc. Sec. Rul. 96-3p, 1996 WL 374181 at *1 (1996). After an ALJ makes a finding of severity as to even one impairment, the ALJ "must consider limitations and restrictions imposed by *all* of an individual's impairments, even those that are not 'severe.'" Soc. Sec. Rul. 96-8p, 1996 WL 374184, at *5 (emphasis added). And when an ALJ considers all of a claimant's impairments in the remaining steps of the disability determination, an ALJ's failure to find additional severe impairments at step two does "not constitute reversible error." *Maziarz v. Sec'y of Health & Human Servs.*, 837 F.2d 240, 244 (6th Cir. 1987)

---

[1] In 2002, the SSA issued a new ruling on obesity, SSR 02-1p, which superseded SSR 00-3p.

Although the ALJ classified several of Nejat's impairments—dysthymic disorder, post-traumatic stress disorder ("PTSD"), and obesity—as non-severe, he concluded that other impairments—arthritis of the right wrist and shoulder and hypertension—qualified as severe. Substantial evidence supports the ALJ's severity determinations. Moreover, even if the ALJ erred at step two, the ALJ's consideration of the cumulative effect of Nejat's impairments (both severe and non-severe) throughout the remaining steps of the analysis rendered any error harmless. *Id.*

Nejat's contention that the ALJ's failure to consider his alleged obesity violated Social Security Ruling 02-1p, 2000 WL 628049, similarly lacks merit. "Social Security Ruling 02-01p does not mandate a particular mode of analysis," but merely directs an ALJ to consider the claimant's obesity, in combination with other impairments, at all stages of the sequential evaluation. *Bledsoe v. Barnhart*, 165 F. App'x 408, 411–12 (6th Cir. 2006). Nejat's obesity claim rests entirely on the "Class 1 obesity" diagnosis of Dr. Davis, the only obesity diagnosis in the record. The ALJ acknowledged Dr. Davis's diagnosis in his decision, but adjudged it unreliable in light of the conflicting findings of other physicians. Given Nejat's failure to list obesity in his application and the scant evidence of obesity in the record, the ALJ properly evaluated this alleged condition. *See Pena v. Chater*, 76 F.3d 906, 909 (8th Cir. 1996).

B.

Nejat next argues that the ALJ violated the SSA's "treating source" regulation, 20 C.F.R. § 404.1527(d)(2), by failing to provide "good reasons" for according diminished weight to treating

physician Dr. Attoussi's opinion—an opinion he contends would have supported a finding of "disabled." A review of the record, however, refutes Nejat's claim, confirming that the ALJ appropriately considered Dr. Attoussi's medical findings and adequately explained the weight given to them.

The treating source regulation requires an ALJ to accord controlling weight to a treating physician's opinion if it is "well-supported by medically acceptable clinical and laboratory diagnostic techniques and is not inconsistent with the other substantial evidence in [the] case record." 20 C.F.R. § 404.1527(d)(2). An ALJ accords more weight to opinions from treating sources because "these sources are likely to be the medical professionals most able to provide a detailed, longitudinal picture of [the claimant's] medical impairment(s) . . . ." *Id.* In declining to assign controlling weight to a treating physician's opinion, an ALJ must have considered "certain factors—namely, the length of the treatment relationship and the frequency of examination, the nature and extent of the treatment relationship, supportability of the opinion, consistency of the opinion with the record as a whole, and the specialization of the treating source—in determining what [other] weight to give the opinion." *Wilson v. Comm'r of Soc. Sec.*, 378 F.3d 541, 544 (6th Cir. 2004) (citing 20 C.F.R. § 404.1527 (d)(2)). Thus, a decision denying benefits "must contain specific reasons for the weight given to the treating source's medical opinion." Soc. Sec. Rul. 96-2p, 1996 WL 374188, at *5 (1996).

Nejat identifies an opinion offered by Dr. Attoussi that the VE interpreted as limiting Nejat to "basically . . . sedentary work"— and the ALJ viewed similarly—as restricting Nejat "to a limited

range of sedentary work." Nejat maintains that had the ALJ adopted this sedentary RFC view from Dr. Attoussi, the grid system would have directed a finding of "disabled." *See* 20 C.F.R. Pt. 404, Subpt. P, App.2, Table 1, Rule 201.17.

But instead of assigning Nejat a sedentary RFC, the ALJ concluded that he retained an RFC for light work with "right upper extremity limitations." Although physicians opine on a claimant's residual functional capacity to work, ultimate responsibility for capacity-to-work determinations belongs to the Commissioner. *See* 20 C.F.R. § 404.1527(e)(1). And ALJ variations from a treating source's medical opinion require "good reasons."

In assigning a light-work RFC, the ALJ *accepted* all aspects of Dr. Attoussi's opinion other than his standing/walking restriction. Dr. Attoussi opined that Nejat could stand and/or walk at least two hours of an eight-hour workday. By rule, however, the full range of light work requires standing and/or walking for approximately six hours of an eight-hour workday. *See* Soc. Sec. Rul. 83-10p, 1983 WL 31251, at *6. Insofar as the ALJ discounted Attoussi's standing/walking restriction[2]—crediting the opinions of other physicians who assessed Nejat as being able to stand and/or walk for six hours of an eight-hour workday—he provided sufficient reasons, calling treatment "minimal" and characterizing Dr. Attoussi's sedentary-work limitation as "too restrictive considering the limited nature of his treatment records." Though brief, these observations address

---

[2]While Dr. Attoussi's RFC assessment fails to specify exactly how long he believed Nejat could stand or walk, it does not preclude light work exertion.

several of the factors an ALJ must consider when deciding to afford non-controlling weight to an opinion by a treating source, including: the "[l]ength of the treatment relationship and frequency of examination," § 404.1527(d)(2)(i), the "[n]ature and extent of the treatment relationship, § 404.1527(d)(2)(ii), and the supportability of the opinion, 20 C.F.R. § 404.1527(d)(3). Given that the ALJ accepted many of Dr. Attoussi's findings and provided "good reasons" for choosing not to wholly adopt the treating physician's standing/walking restriction, we reject this challenge to the decision.

## C.

Nejat also contends that the Commissioner failed to carry his burden of establishing that jobs exist in significant numbers in the national economy that Nejat can perform. Substantial evidence supporting the ALJ's finding defeats Nejat's contention.

At step five of the evaluation, an ALJ must decide whether a significant number of jobs exist that will accommodate the claimant's RFC and vocational profile. *Jones*, 336 F.3d at 474. Using the medical-vocational grid in conjunction with a "Vocational Specialist Comments Form" and VE testimony, the ALJ concluded that a significant number of jobs existed in the national economy that Nejat could perform. In reaching this conclusion, the ALJ relied on the VE form to find that Nejat could perform representative light jobs such as form presser, gluer, or hand cutter, and on VE testimony to find that he could perform 800 inspector jobs, 2000 assembly jobs, and 2000 hand packer jobs. Nejat counters that both the VE form and the VE testimony upon which the ALJ relied

are "defective" and "[do] not constitute substantial evidence."

First, Nejat criticizes the ALJ's reliance on the VE form that identified three examples of unskilled light jobs he could perform, but omitted the number of these jobs available. Nejat rightly notes that this evidence alone could not support the ALJ's finding. We find the omission harmless, however, because the VE's *testimony* provides substantial evidence that significant jobs exist.

Turning to the VE testimony, Nejat insists that his physical limitations preclude him from performing hand packer jobs and his limited language skills preclude him from performing inspector jobs, thus, eliminating two out of the three jobs that the VE testified he could perform. According to Nejat, the remaining assembly jobs do not constitute a significant number. Even if we agree that the ALJ's finding included jobs precluded by Nejat's exertional and non-exertional limitations, the ALJ's count of 2000 jobs available in the third category withstands Nejat's challenge.

This court addressed "the difficult task of enumerating exactly what constitutes a 'significant number' [of jobs]" in *Hall v. Bowen*, 837 F.2d 272, 275 (6th Cir. 1988). Refusing to "set forth one special number [as] the boundary between a 'significant number' and an insignificant number of jobs," *Hall* counseled that courts address the determination on a case-by-case basis. *Id*. In this case, we conclude that the VE's testimony demonstrates significant job opportunities available to Nejat. *See, e.g.*, *Mickelson-Wurm v. Comm'r*, 285 F. App'x 482, 486–87 (9th Cir. 2008) (2000 jobs a significant number); *Born v. Sec'y of Health & Human Servs.*, 923 F.2d 1168, 1174–75 (6th Cir. 1990) (2500 jobs); *Barker v. Sec'y of Health & Human Servs.*, 882 F.2d 1474, 1478–79 (9th Cir.

1989) (1200 jobs); *Hall*, 837 F.2d at 275 (1350 jobs); *Jenkins v. Bowen*, 861 F.2d 1083, 1087 (8th Cir. 1988) (500 jobs).

## D.

Finally, Nejat accuses the ALJ of failing "to follow applicable regulations, rulings, and case law regarding the evaluation of [his] symptoms, including pain."  But the district court properly deemed Nejat's one-sentence, conclusory objection to the magistrate's report insufficient to preserve this issue for appeal.  *See Spencer v. Bouchard*, 449 F.3d 721, 725 (6th Cir. 2006) (filing general or conclusory objections tantamount to a complete failure to object); *see also Thomas v. Arn*, 474 U.S. 140, 155 (1985) (failure to object to a magistrate's report generally forfeits appellate review).

## IV.

We affirm.