NOT RECOMMENDED FOR PUBLICATION
File Name: 24a0136n.06

No. 23-3667

## UNITED STATES COURT OF APPEALS
## FOR THE SIXTH CIRCUIT

<table>
<tr><td></td><td>)</td><td rowspan="10"></td></tr>
<tr><td>DENNIS D.,</td><td>)</td></tr>
<tr><td></td><td>)</td></tr>
<tr><td>Plaintiff-Appellant,</td><td>)</td></tr>
<tr><td></td><td>)</td></tr>
<tr><td>v.</td><td>)</td></tr>
<tr><td></td><td>)</td></tr>
<tr><td></td><td>)</td></tr>
<tr><td>COMMISSIONER OF SOCIAL SECURITY,</td><td>)</td></tr>
<tr><td></td><td>)</td></tr>
<tr><td>Defendant-Appellee.</td><td>)</td></tr>
<tr><td></td><td>)</td></tr>
</table>

FILED
Mar 20, 2024
KELLY L. STEPHENS, Clerk

ON APPEAL FROM THE UNITED STATES DISTRICT COURT FOR THE SOUTHERN DISTRICT OF OHIO

OPINION

Before: STRANCH, LARSEN, and DAVIS, Circuit Judges.

DAVIS, Circuit Judge. Plaintiff Dennis D. filed separate applications for disability insurance benefits in 2016 and again in 2019. Both applications were denied after Administrative Law Judges ("ALJ") concluded that Dennis D. was not disabled as defined under the Social Security Act. Each decision found that Dennis D. suffered from severe impairments but that he retained the residual functional capacity ("RFC") to perform "light work" with certain limitations. The decision for the second application, which covered an unadjudicated time-period beginning a day after the first determination, differed from the first decision in that the new ALJ rejected the prior finding that Dennis D. suffered from a mental impairment. And while the second ALJ also concluded that Dennis D. could perform "light work," he assessed slightly different limitations than before. Dennis D. argues that the second ALJ's decision ran afoul of our decision in *Earley v. Commissioner of Social Security*, 893 F.3d 929 (6th Cir. 2018), with respect to its treatment of

the earlier decision's assessment of his RFC. The district court accepted the magistrate judge's Report and Recommendation finding that the ALJ appropriately took a "fresh look" at the evidence while considering the prior decision and reached an independent determination. Thus, the district court concluded that substantial evidence supported the denial of Dennis D.'s subsequent application for disability insurance benefits. We agree and affirm.

## I.

In 2016, Dennis D. applied for disability insurance benefits under Title II of the Social Security Act, 42 U.S.C. §§ 401–34 (the "Act"). ALJ Gregory Kenyon denied Dennis D.'s claim finding that he was not disabled from October 2015 through August 2018. ALJ Kenyon found that Dennis D. suffered from severe physical and mental impairments, including coronary artery disease, chronic obstructive pulmonary disease ("COPD"), diabetes, obesity, peripheral vascular disease, and depression. Nevertheless, he concluded that Dennis D. had the RFC to perform a limited range of "light work" subject to conditions:

> (1) occasional crouching, crawling, kneeling, stooping, balancing, and climbing of ramps and stairs; (2) no climbing of ladders, ropes, and scaffolds; (3) no work around hazards such as unprotected heights or dangerous machinery; (4) no concentrated exposure to temperature extremes, respiratory irritants, or excess humidity; (5) occasional use of the lower extremities for pushing, pulling, or foot controls; and (6) limited to performing unskilled, simple, repetitive tasks.

(R. 8-3, PageID 136). And with these limitations, Dennis D. could not perform his past work but could perform other jobs existing in significant numbers in the national economy. He was, therefore, not disabled.

In 2019, Dennis D. filed a second application claiming the same onset date of October 2015 as the previous application. In July 2021, after a hearing on the new claim for benefits, a different ALJ—Gregory Beatty—declined to reopen Dennis D.'s prior claim. Nonetheless, ALJ Beatty

analyzed whether Dennis D. could be considered disabled under the Act for the period following ALJ Kenyon's decision (September 2018 to July 2021) and found that he was not disabled. He rejected the prior finding that Dennis D. suffered from a severe mental impairment, but like ALJ Kenyon, ALJ Beatty determined that Dennis D. retained the RFC to perform "light work" with the following modified limitations:

> no climbing of ladders, ropes, or scaffolds with occasional balancing, stooping, kneeling, crouching, crawling, or climbing of ramps and stairs. He is limited to occasional pushing, pulling, and use of foot controls with the bilateral lower extremities. The claimant is further limited with no work at unprotected heights or moving mechanical parts, and he should avoid concentrated exposure to extreme cold, extreme heat, and dusts, odors, fumes, and other pulmonary irritants.

(R. 8-2, PageID 48). In reaching this conclusion, ALJ Beatty relied on a plethora of evidence and reviewed examination notes from multiple medical opinions. For instance, ALJ Beatty reviewed Dennis D.'s treatment records for various health issues from the Kettering Health Network. ALJ Beatty also considered records from Dennis D.'s family practitioner, Dr. James Thomson, who prescribed Dennis D. medications to treat his diabetic neuropathy, arthritis pain, fluctuating blood sugars, and high blood pressure. ALJ Beatty reviewed examination notes from Dennis D.'s treatment at Pulmonary Medicine of Dayton, where he reported some shortness of breath and was prescribed an inhalant for his COPD. Dennis D noted that he could still walk at least two blocks. Dennis D. also participated in a psychiatric exam with Dr. James Rosenthal, where he was diagnosed with anxiety and depressive disorders; no work-related restrictions, however, were identified.

In October 2019, Dennis D. underwent a physical examination with Dr. Philip Swedberg, who assessed coronary artery disease treated with a coronary stent and chronic chest pain, COPD, diabetic neuropathy, and diabetic dermopathy in the lower extremities. Dr. Swedberg's notes

indicated that Dennis D. had some reduced spine and knee range of motion and decreased foot sensation resulting in an inability to squat, but he walked with a steady gait. Dr. Swedberg opined that Dennis D. could perform "a mild to moderate amount of sitting, ambulating, standing, bending, kneeling, pushing, pulling, lifting and carrying heavy objects." (R. 8-7, PageID 890).

Two sets of state-agency medical and psychological consultants also assessed Dennis D. during the proceedings before ALJ Beatty: Dr. Cindy Matyi and Dr. Leslie Green. In November 2019, Dr. Matyi reviewed Dennis D.'s claim allegations, the medical records from 2018 and 2019, and available medical opinion evidence, including records from the prior decision before ALJ Kenyon. Dr. Matyi determined that Dennis D. had moderate deficits in concentration, persistence, or maintaining pace, but had no other mental deficits. Dr. Green evaluated Dennis D.'s physical functions using current medical history, and in consideration of the prior findings, adopted ALJ Kenyon's RFC noting that there was "not new and material evidence affecting the findings." (R. 8-3, PageID 113).

The remaining two medical specialists' findings mirrored those of Drs. Matyi and Green. Dr. Joan Williams and Dr. Mehr Siddiqui considered the updated medical evidence from 2020 in conjunction with Dennis D.'s prior medical history, and the allegations of the new claim. Dr. Williams, in examining Dennis D.'s mental capacity, like Dr. Matyi, found Dennis D. had moderate deficits in concentration, persistence, or maintaining pace, but had no other deficits. Considering both ALJ Kenyon's decision and the current evidence, Dr. Siddiqui adopted ALJ Kenyon's RFC finding that Dennis D. could perform light work because his physical limitations were unchanged.

After the Social Security Administration Appeals Council denied Dennis D.'s request for review, he filed a complaint against the Commissioner of Social Security (the "Commissioner")

in the United States District Court for the Southern District of Ohio. The magistrate judge issued a recommendation affirming the Commissioner's decision, and over the objections by Dennis D., the district court adopted the Report and Recommendation, affirming ALJ Beatty's determination. Dennis D. timely appealed.

## II.

We review de novo a district court's decision denying social security benefits. *See Moats v. Comm'r of Soc. Sec.*, 42 F.4th 558, 561 (6th Cir. 2022). Our review, nevertheless, is "limited to determining whether [the Commissioner's decision] is supported by substantial evidence and was made pursuant to proper legal standards." *Rogers v. Comm'r of Soc. Sec.*, 486 F.3d 234, 241 (6th Cir. 2007); 42 U.S.C. § 405(g). Substantial evidence "requires more than a mere scintilla of evidence, . . . mean[ing] only . . . such relevant evidence as a reasonable mind might accept as adequate to support a conclusion." *Moats*, 42 F.4th at 561 (internal quotation marks omitted) (quoting *Biestek v. Berryhill*, 139 S. Ct. 1148, 1154 (2019)).

## III.

The Social Security Administration adheres to a "five-step sequential evaluation process" when determining whether a claimant is disabled under the Act:

> The Administration checks (1) if the person is not engaged in gainful activity, (2) if she has a severe, medically verifiable physical or mental impairment, and (3) if she has a qualifying impairment that leads to a disability finding by default. If this does not resolve her application, the Administration calculates her residual functional capacity, which reflects what sorts of work she can do despite her impairment[.] If (4) she has held a job that someone with her residual functional capacity can still do or if (5) someone of her age, education, work experience, and residual functional capacity can adjust to other work available in the national economy, then she is not disabled.

*Jones v. Comm'r of Soc. Sec.*, 815 F. App'x 926, 929 (6th Cir. 2020) (internal citations omitted) (quoting *Earley v. Comm'r of Soc. Sec.*, 893 F.3d 929, 931–32 (6th Cir. 2018)). "The claimant

bears the burden of proof during the first four steps, but the burden shifts to the Commissioner at step five." *Mokbel-Aljahmi v. Comm'r of Soc. Sec.*, 732 F. App'x 395, 399 (6th Cir. 2018) (quoting *Wilson v. Comm'r of Soc. Sec.*, 378 F.3d 541, 548 (6th Cir. 2004)). On appeal, Dennis D. challenges ALJ Beatty's decision, arguing that (1) he applied the incorrect legal standard in reviewing Dennis D.'s second application when he indicated that he was bound by ALJ Kenyon's decision and (2) as a result, the decision inappropriately relied on two state agency reviewing physicians' opinions—both of which adopted the prior RFC—in denying the application. Dennis D.'s appeal focuses solely on the ALJ's RFC finding. We, therefore, limit our review to ALJ Beatty's analysis in support of his RFC determination.

*Legal Standard for Subsequent Applications.* Dennis D. maintains that ALJ Beatty applied an incorrect legal standard to his claim for disability benefits for the subsequent unadjudicated period. In *Drummond v. Commissioner of Social Security*, 126 F.3d 837 (6th Cir. 1997), honoring principles of res judicata, we observed that "[j]ust as a social security claimant is barred from relitigating an issue that has been previously determined, so is the Commissioner." *Id.* at 842. Thus, "[w]hen the Commissioner has made a final decision concerning a claimant's entitlement to benefits, the Commissioner is bound by this determination absent changed circumstances." *Id. Drummond* mandated that absent evidence that a claimant's condition has improved, findings issued by an ALJ as part of a prior disability determination are binding on an ALJ in a subsequent proceeding. *Id.*

We later clarified the scope of *Drummond*'s reach in *Earley*, noting that res judicata only applies to a claim if an applicant files a new application for the same period of disability that the Commissioner rejected in a prior decision. 893 F.3d at 933. We further explained that *Drummond* did not intend for res judicata to foreclose the possibility of a claimant seeking review of a new

application for a *new* period of disability. *See id.* Instead, where disability is alleged for a subsequent period, an ALJ must give the new application a "fresh look" where it "contain[s] new evidence or satisf[ies] a new regulatory threshold . . . while being mindful of past rulings and the record in prior proceedings." *Id.* at 931. In undertaking this task, "it is fair for an [ALJ] to take the view that, absent new and additional evidence, the first [ALJ's] findings are a legitimate, albeit *not binding*, consideration in reviewing a second application." *Id.* at 933 (emphasis added) (noting that an "[ALJ] honors th[e] principles [of res judicata] by considering what an earlier judge found with respect to a later application and by considering that earlier record"). This does not mean that an ALJ reviewing a second application must presume that a prior disability decision will prevail in the subsequent application. Rather, it is the responsibility of the ALJ reviewing the claim for the later unadjudicated period to determine how much weight to accord both the prior decision and any newly submitted evidence; this includes the effect of a new regulatory threshold, if applicable.

Dennis D. accurately notes that ALJ Beatty stated that "Judge Kenyon's previous residual functional capacity determination is *binding*"—an articulation of the legal standard that is incorrect in light of *Earley*. (ECF 7, Appellant's Br. 8; R. 8-2, PageID 42). As discussed, *Earley* explained that an ALJ's decision does not have a universally binding effect on a subsequent application involving an unadjudicated time period. *See* 893 F.3d at 933. Given this inaccurate recitation of the legal effect of the prior determination, the question for our consideration is whether, despite this misstatement of the legal standard, ALJ Beatty treated his review of the new application as if he were bound by the prior decision, thereby depriving Dennis D. of a "fresh look." He did not. ALJ Beatty engaged in an in-depth review and analysis of new evidence relevant to Dennis D.'s current claim period as well as the evidence and findings from the prior decision. This approach conforms with our ruling in *Earley*.

First, in the paragraph of ALJ Beatty's decision announcing the legal standard, he states, "the Administration cannot make a different finding in adjudicating a subsequent disability claim with an unadjudicated period arising under the same title of the Act, unless new and material evidence or changed circumstances provide a basis for a different finding concerning a claimant's residual functional capacity." (R. 8-2, PageID 42 (citing Social Security Acquiescence Ruling 98-4(6), 63 Fed. Reg. 29771 (June 1, 1998)[1] and *Drummond*, 126 F.3d 837)). In the very next sentence, he finds that Dennis D. "produced new and material evidence documenting a significant change in [his] condition, particularly with respect to his improvement in mental functioning." (*Id.*) Consequently, and as the magistrate judge correctly held, a logical reading of the paragraph indicates that ALJ Beatty's concluding statement that ALJ Kenyon's RFC determination was "binding" merely reflects a scrivener's error; to be consistent with the rest of the paragraph, it should have read "not" binding. Persuasive, albeit unpublished, caselaw suggests that such typographical errors can be harmless. *Calkins v. Sec'y of Health & Hum. Servs.*, No. 85-5685, 1986 WL 17083, at *2 (6th Cir. May 7, 1986) (per curiam) (holding that the district court properly "examined the opinion as a whole to interpret the true meaning of the ALJ's findings" and was not required to "ignore the real finding of the ALJ and instead blindly follow the transcriber's version of the finding"); *see also Barnes v. Comm'r of Soc. Sec.*, No. 16-13714, 2018 WL 1474693, at *8 n.2 (E.D. Mich. Mar. 6, 2018) (finding that scrivener's errors were harmless because "the ALJ's true meaning is easily discernible for the analysis on each topic"); *Duvall v. Comm'r of Soc. Sec.*,

---

[1] The Social Security Administration created AR 98-4(6), a Sixth Circuit-specific acquiescence ruling, in response to our decision in *Drummond*. Since its issuance, however, we clarified *Drummond*'s reach in *Earley*, as discussed *supra*. 893 F.3d at 933. After *Earley*, AR 98-4(6) seems to create tension between this Circuit's precedent and the agency's acquiescence ruling.

No. 2:19-cv-2346, 2020 WL 90750, at *2 (S.D. Ohio Jan. 8, 2020) (noting that a scrivener's error "does not, on its own, warrant remand"). We believe that to be the case here.

Additional analysis elucidates the point that ALJ Beatty did not consider himself bound by the earlier ruling. For instance, at the beginning of the hearing, ALJ Beatty plainly stated, "I know that there have been prior decisions that have been made in this case. However, I am not bound by those. I'll make my own independent decision." (R. 8-2, PageID 68). Then, when making his findings at steps two and three of the sequential analysis, ALJ Beatty independently considered the medical experts' analyses, ultimately rejecting ALJ Kenyon's mental impairment severity finding. ALJ Beatty's discussion of his findings based on medical evidence and his detailed discussion of Dennis D.'s functional abilities in four broad areas of mental functioning exemplify his open approach to the record. Early in his analysis, ALJ Beatty walked through Dennis D.'s medical records spanning a 3-year period (2017–2019) to assess Dennis D.'s mental functioning. These records revealed that Dennis D. had maintained relatively normal mental function with "limited, conservative treatment." (R. 8-2, PageID 45). For instance, although observations of anxiety and depression first emerged in Dennis D.'s medical records from 2017, his mental functioning was within normal limits.

ALJ Beatty also noted that during a consultative evaluation with Dr. Rosenthal, Dennis D. reported that he attended counseling three times in 2018, but denied any suicidal thoughts, panic attacks, trauma symptoms, or symptoms of psychosis. In fact, Dennis D. advised that he was able to operate a motor vehicle, work for about 20 minutes at a time before taking a rest, interact with friends on occasion and maintain regular interaction with family, read and write, and speak normally with no reports of confusion. And even though Dennis D. reported taking an anti-depressant to decrease feelings of sadness, irritability, and frustration with life's stressors, he was

never hospitalized for these feelings. Considering this evidence and other psychological findings in the records, ALJ Beatty found that (1) Dennis D. did not have any limitations with respect to his ability to understand, remember, or apply information, (2) he had no limitations with his interactions with others, (3) he had no limitations to concentrate, persist, and maintain pace; and (4) he had no limitation on his ability to adapt or manage himself. As such, ALJ Beatty assessed no mental limitations during the relevant period, despite ALJ Kenyon's earlier decision assessing "moderate" limitations (and thus a severe mental impairment) for the prior period.

The RFC determination also illustrates ALJ Beatty's fresh assessment. This evaluation included a discussion of testimony from Dennis D. as well as a review of medical records for the relevant period, leading ALJ Beatty to conclude that "the record does not support symptoms or limitations as severe as alleged." (*Id.* at 50). ALJ Beatty determined that Dennis D. had the following severe impairments: "COPD, chronic ischemic heart disease, essential hypertension, peripheral vascular disease, diabetes mellitus, degenerative disc disease, and obesity." (*Id.* at 44). In assessing the medical evidence, ALJ Beatty focused on a 7-year period (2015–2021) of Dennis D.'s "longstanding history of physical impairments," but noted that the record did not support a finding that his symptoms were "as intense, persistent, or limiting as alleged." (*Id.* at 49). For instance, in August 2015 and January 2016, Dennis D. went to the emergency room complaining of difficulty breathing. But none of the tests administered during these visits revealed any serious complications. Similarly, in May 2018 and July 2019, cardiology notes show that he experienced recurrent chest pains, associated with shortness of breath but without any dizziness or lightheadedness. But the ALJ detailed how other medical records, including x-rays and EKG testing, reflected no abnormal findings.

After reviewing the medical records in their entirety—including medical opinions from Dennis D.'s primary care physician, consultative internal medicine and psychological examiners, a reviewing physician, and a reviewing psychologist—ALJ Beatty found that Dennis D. could engage in "light work" as it "fully addresses the claimant's symptoms and limitations while giving him the full benefit of the doubt." (R. 8-2, PageID 54). To the extent that Dennis D. argues that the similarity of the conclusions reached by ALJ Beatty and ALJ Kenyon—that Dennis D.'s physical and mental impairments did not preclude him from engaging in light work—has some bearing on whether ALJ Beatty applied the correct standard, we find that it does not. As noted, unlike the RFC for the earlier-adjudicated period, ALJ Beatty's RFC included no limitations relating to mental functioning. And beyond this pointed difference in outcome, the record is replete with evidence that ALJ Beatty reached an independent conclusion while recognizing that he was not bound by the prior decision—as required under *Earley*.

Resisting this conclusion, Dennis D. points us to the unpublished district court decision in *Nadia A.T. v. Comm'r of Soc. Sec.*, No. 3:22-cv-12, 2023 WL 2401723 (S.D. Ohio March 8, 2023). In *Nadia A.T.*, the district court vacated an ALJ's RFC determination because it found that the ALJ did not take a "fresh look" as required by *Earley*. *Id.* at *4. Specifically, the court concluded that although the ALJ acknowledged the new medical evidence as material, he did not treat the ruling on the prior application as nonbinding; instead, the ALJ for the subsequent, unadjudicated period, treated the prior RFC finding "as a mandatory starting place for his own RFC determination." *Id.*; *see also Robert K. v. Comm'r of Soc. Sec.*, No. 3:22-CV-00091, 2023 WL 5662785, at *6 (S.D. Ohio Sept. 1, 2023) ("Thus, this Court holds that although ALJs may (and should) consider a prior ALJ decision, they may not use that prior decision as a starting point for their analysis or otherwise presume that it will dictate the outcome of the pending application."). In doing so, according to

the court, the ALJ improperly took the view that he was compelled to measure the new medical evidence "against the backdrop" of the prior RFC finding instead of assessing the new evidence on its own merits. *Id.* at \*4. But as we said in *Earley*, to promote "finality, efficiency, and consistent treatment of like cases," it is perfectly acceptable for a subsequent ALJ to presume the accuracy of a prior finding. 893 F.3d at 933. And if, for instance, a claimant were to offer "very little new evidence" in a new application, then such a claimant should generally "not have high expectations about success" for their subsequent application. *Id*.

Given the above, the suggestion that an ALJ considering a subsequent application should not evaluate a claimant's new records for evidence of a significant change in relation to a prior valid finding strikes us as an overly broad reading of *Earley*. Presuming accuracy is not the same as treating prior findings as binding. ALJ Beatty's analysis demonstrates that he did not consider himself bound by ALJ Kenyon's RFC finding. Rather, he considered it along with Dennis D.'s proffered evidence pertinent to the unadjudicated period to fashion Dennis D.'s RFC.

*Opinions of Reviewing Physicians*. Dennis D. also argues that ALJ Beatty relied on "flawed opinion evidence" resulting from subsequent medical experts treating the first application's findings as binding on the second. (ECF 7, Appellant's Br. 25). In particular, Dennis D. asserts that the reviewing physicians failed to conduct a fresh review of the current medical evidence because they started with the understanding that they were bound by the prior RFC. And as a result, ALJ Beatty's reliance on their determination "tainted" his review. (ECF 7, Appellant's Br. Page 12). We question this assessment. The record reflects that the reviewing physicians likely did conduct a fresh analysis. But even accepting, without deciding, that they did not, we find that ALJ Beatty still reached an independent determination. Dennis D.'s argument, taken to its logical conclusion, would suggest that a subsequent reviewing physician's RFC assessment that

mirrors a prior RFC finding should be ignored altogether if the wrong legal standard is announced, despite evidence of a fresh review. We think such a view is overbroad. As we have previously observed, "[f]resh review is not blind review." *Earley*, 893 F.3d at 934. Accordingly, "[a] later administrative law judge may consider what an earlier judge did if for no other reason than to strive for consistent decision making." *Id.* Without deciding the issue, we see no reason why the same would not hold true for subsequent medical reviewers—we think it "fair" for them to take into account the RFC assessed for the previously-adjudicated period. *See id.* at 933. It seems unobjectionable for those reviewers to reach the same conclusion based on their own independent evaluations.

In any event, ALJ Beatty did not "defer or give any specific evidentiary weight, including controlling weight, to any prior administrative medical finding(s) or medical opinion(s), including those from medical sources." (R. 8-2, PageID 54). Instead, among the various medical opinions that ALJ Beatty considered, he found the opinions of the two state reviewing physicians—Dr. Green and Dr. Siddiqui—to be "mostly persuasive."[2] (*Id.* at 55). While both doctors adopted the RFC from the prior decision, the record shows that they each analyzed the available data and reached their own independent determinations. In evaluating Dennis D.'s physical functioning,

---

[2] Under the Social Security Administration's revised regulations, the Commissioner will not "defer or give any specific evidentiary weight, including controlling weight, to any medical opinion(s) or prior administrative medical finding(s), including those from [a claimant's] medical sources." 20 C.F.R. §§ 404.1520c(a), 416.920c(a). Rather, the Commissioner shall "evaluate the persuasiveness" of all medical opinions and prior administrative findings using the factors set forth in the regulations: (1) supportability; (2) consistency; (3) relationship with the claimant, including "[l]length of the treatment relationship," "[f]requency of examinations," "[p]urpose of the treatment relationship," "[e]xtent of the treatment relationship," and "[e]xamining relationship"; (4) specialization; and (5) other factors, including but not limited to "evidence showing a medical source has familiarity with the other evidence in the claim or an understanding of [the agency's] disability program's policies and evidentiary requirements." 20 C.F.R. § 404.1520c(a), (c)(1)–(5); *see also id.* § 416.920c(a), (c)(1)–(5).

each doctor reviewed the current claim information and allegations, medical records, and the subjective and medical opinion evidence to date. For instance, Dr. Green reviewed medical records from Kettering Health Network, which contained notes dating back as early as October 2014, lending to a more longitudinal perspective of Dennis D.'s functioning. Other records Dr. Green reviewed showed that in May 2018, Dennis D. reported that he experienced sharp chest pain with "significant shortness of breath." (R. 8-7, PageID 377). Dr. Green summarized this information in an analysis of the evidence. The notes also revealed that Dennis D. experienced swelling in his legs and chronic back pain, which was likewise reflected in Dr. Green's notes. Dr. Green also reviewed medical records from July 2019, where the attending physician noted Dennis D.'s hypertension, shortness of breath and chest pains. The notes also reflect that because of the arthritis in his knees, Dennis D. has "no endurance to do a lot of activities." (*Id.* at 358). This information is also reflected in Dr. Green's notes.

Similarly, Dr. Siddiqui reviewed medical records from Dennis D.'s physical examination in October 2019, where Dr. Swedberg opined that Dennis D. had "a steady gait without the use of ambulatory aids," noting that he is "comfortable in both the sitting and supine positions." (R. 8-7, PageID 888). Dr. Swedberg also opined that although he heard "diminished breath sounds," he found "no clinical evidence of congestive heart failure." (*Id.*) Based on his review, Dr. Siddiqui concluded that Dennis D. was "capable of performing a mild to moderate amount of sitting, ambulating, standing, bending, kneeling, pushing, pulling, lifting and carrying heavy objects." (R. 8-3, PageID 121). As a result of both state agency physicians' review of Dennis D.'s expansive medical history, each concluded that Dennis D. could perform light work because his physical limitations were unchanged, and thus, the prior ALJ's RFC finding should remain because there was "not new and material evidence affecting the findings." (*Id.* at 113, 123).

Again, even accepting, without deciding, that Drs. Green and Siddiqui considered themselves bound by the prior RFC determination in forming their opinions about Dennis D.'s RFC—and even assuming that would be error under *Earley*—imputing such errors to ALJ Beatty, as Dennis D. contends we should, is unwarranted. To begin, ALJ Beatty did not fully adopt the doctors' opinions. Instead, he found them "mostly persuasive." In discounting their weight, ALJ Beatty measured their opinions against record evidence, explaining that despite "includ[ing] additional physical impairments to give the claimant the full benefit of the doubt," the record evidence showed that Dennis D.'s physical functioning remained "largely unchanged" in determining his RFC. (R. 8-2, PageID 55). Moreover, the opinions from Drs. Green and Siddiqui were not the only evidence on which ALJ Beatty relied to formulate Dennis D.'s RFC. As discussed, ALJ Beatty considered the opinions of consultative physicians and Dennis D.'s primary care physician, along with a raft of medical records—including significant objective testing that showed, among other things, "relatively normal cardiac functioning," no significant worsening in pulmonary function, and generally normal strength. (R. 8-2, PageID 55; *see also* R. 8-7, PageID 814 (pulmonary), 823 (pulmonary) 874 (cardiac); R. 8-8, PageID 1121 (cardiac), 1130 (pulmonary)). The ALJ also supportably discounted the significant limitations suggested by Dr. Thomson. ALJ Beatty found that Dr. Thomson's opinion "noted [Dennis D.'s] diagnoses, but [it] did not report objective findings that would support the extreme limitations." (R. 8-2, PageID 56). He further found that Dr. Thomson's treatment notes did not lend support to the suggested limitations. For instance, Dr. Thomson noted that Dennis D. "sometimes presented with reduced range of motion or strength, but strength was usually still relatively good at 4/5," and Dr. Thomson's notes "rarely reflected" Dennis D.'s abnormalities regarding his cardiovascular or respiratory functions although Dennis D. complained about the symptoms. (*Id.*)

Dennis D. has not pointed to evidence suggesting that limitations greater than those included in ALJ Beatty's RFC should prevail. And while physicians' opinions should play a part in fashioning a claimant's RFC, the ultimate determination falls to the ALJ, who considers the record as a whole. *See Nejat v. Comm'r of Soc. Sec.*, 359 F. App'x 574, 578 (6th Cir. 2009) ("Although physicians opine on a claimant's residual functional capacity to work, ultimate responsibility for capacity-to-work determinations belongs to the Commissioner."). Consequently, regardless of any error(s) in the reviewing physicians' evaluative approach, ALJ Beatty's reduced reliance on their opinions combined with his own comprehensive evaluation of the record evidence to inform his RFC determination satisfies us that no such errors infected his decision making and, under these circumstances, provide no grounds for remand.

**IV.**

In sum, ALJ Beatty analyzed Dennis D.'s application consistent with *Earley*. While remaining "mindful" of both ALJ Kenyon's ruling and the record as a whole, his decision demonstrates that he took a "fresh look" at the relevant evidence before him and reached his own decision. *Earley*, 893 F.3d at 931. Substantial evidence supports the ALJ's ruling, and as such, we will not disturb the Commissioner's conclusions. *See Emard v. Comm'r of Soc. Sec.*, 953 F.3d 844, 849 (6th Cir. 2020).

For the foregoing reasons, we affirm.